PACIFIC EMPLOYERS INSURANCE COMPANY V.
J. W. BRANNON.

No. A-3024. Decided July 18, 1951.
Rehearing overruled October 3, 1951.
(242 S. W., 2d Series, 185.)

442

*Chilton Bryan* and *J. L. McConn, Jr.,* both of Houston, for petitioner.

The Court of Civil Appeals erred in holding that there was no final order by the Industrial Accident Board approving the compromise settlement agreement in question. Commercial Casualty Ins. Co. v. Hilton, 126 Texas 497, 87 S.W. 2d 1081; Gulf, C. & S. F. Ry. Co. v. Harriett, 80 Texas 73, 15 S.W. 556; Union Central Life Ins. Co. v. Imsland, 91 Fed. 2d 365.

*Peter P. Cheswick,* of Houston, for respondent.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

The respondent employee Brannon brought this suit in the District Court as one to set aside a workmen's compensation claim settlement theretofore approved by the Industrial Accident Board. The sole ground for relief alleged was fraud in the settlement negotiations on the part of the defendant-petitioner, Pacific Employers Insurance Company. In the first stage of the litigation the cause was dismissed on a plea of said defendant insurer that the amount of the settlement ($215.00) was below the jurisdictional limit of the District Court, but this holding was reversed by us and the cause sent back for trial on the merits. 148 Texas 289, 224 S. W. 2d 466. Thereafter a jury trial was had, at the conclusion of which the respondent employee abandoned his contentions of fraud (which were strongly disputed in the petitioner's evidence) by failing to request an issue thereon. However, the evidence showing without dispute the official proceedings incident to approval of the settlement as well as the fact that respondent had neither cashed the draft mailed to him as the final settlement payment following the approval order nor had executed the receipt therefor as directed by the defendant insurance carrier and the Board, he then urged that the settlement was "incompleted" and that the approval of the Board was not final in character; and on such grounds he moved in one form or another that the trial court render judgment setting aside the settlement as prayed in his petition "or" that it dismissed his suit for want of jurisdiction over a settlement that was still pending unapproved before the Board. The court overruled his motion or motions and having received a verdict favorable to the defendant insurer upon sundry issues submitted at its request, rendered judgment that Brannon take nothing, thus adjudicating both that the court rather than the Board had jurisdiction and that Brannon was bound by his settlement.

Brannon appealed, complaining of the submission of the issues of the defendant insurer, but primarily contending that his so-called motion for judgment notwithstanding the verdict should have been granted, "because there was no evidence of a final and formal approval of the alleged settlement agreement by the Industrial Accident Board of Texas. Jurisdiction to determine the matter is still reposing in the board and not in the trial court." The Court of Civil Appeals interpreted this principal point as simply an attack on the jurisdiction of the trial court, and we shall say at this juncture that we do not see how it could have been construed as anything more. So construing it, the Court of Civil Appeals proceeded to sustain it, reversing the judgment and dismissing the suit. 235 S. W. 2d 669, 673. We granted writ of error on rehearing of the application therefor, supported by an amicus curiae brief filed at the request of the Industrial Accident Board, and, after hearing oral argument, have concluded that the holding below was erroneous.

The court evidently summarizes its view as follows: "* * * until there had been a satisfaction of the accord contemplated by the settlement, there was no settlement, and it is clear that the Board did not intend its order of approval to be final unless or until the plaintiff had received the full satisfaction of the accord". Particularly because of the latter part of this statement, some detail of the relevant facts and proceedings is in order.

The settlement agreement, which bore date of November 17th, 1947, was evidently made upon, and duly followed, a single sheet form furnished or originally prepared by the Board and entitled, "Compromise Settlement Agreement". It recites the names of all concerned; that the liability of the insurance carrier or the extent of the injury is uncertain, indefinite or incapable of being satisfactorily established; detail of wages, lost time, compensation rate, amount of compensation paid to date of settlement, and age of the employee; whether the latter is disfigured by the injury and by whom the accrued medical and hospital expenses will be or have been paid. It then states that the parties "agree to compromise and settle this claim for workmen's compensation insurance for" followed by the amount to be paid ($100.00) and reciting that such payment is "in addition to" the amount theretofore paid, specifying the latter ($115.00). The final provision reads:

"It is further agreed that this compromise settlement is made subject to the approval of the Industrial Accident Board, and

that when said approval has been given and the amount mentioned herein has been paid, the same will have been fully consummated and the compensation under the Employers' Liability Act will have been fully and finally compromised, settled and satisfied."

At the top of the form, below the title, but above the foregoing matter, there are five blanks at the left, apparently for filing or record purposes of the Board, which were duly filled out, and on the right the following:

"ORDER APPROVING COMPROMISE SETTLEMENT AGREEMENT:

. "The Board finds the liability of the insurance carrier, or the extent of the injuries of the employee is uncertain, indefinite and incapable of being satisfactorily established. It is ordered that the compromise agreement be, and the same is hereby approved.

"This the        day of                        19    ."

This latter portion of the form was dated December 1st, 1947 (some two weeks after the date of the settlement agreement) and was signed by the Chairman and another member of the Board. Including this signed order, the entire executed form was placed in evidence without objection.

On the day following the date of this order, the defendant-petitioner insurance carrier mailed to Brannon, and the latter duly received, a letter with enclosures therein described, the letter reading as follows:

"Dear Sir: We are enclosing draft in the amount of $100.00 covering compensation due you in accordance with compromise settlement agreement, with duplicate copy of receipt attached. Both copies of the receipt should be signed and left attached to the draft, otherwise, the bank will refuse payment."

The draft of the carrier was attached to the enclosed receipt and bore a notation on its face that "ATTACHED RECEIPT MUST BE SIGNED, AND LEFT ATTACHED OTHERWISE DRAFT INVALID."

The receipt was on, and followed, a Board form entitled "COMPROMISE SETTLEMENT RECEIPT, INDUSTRIAL ACCIDENT BOARD, AUSTIN, TEXAS." It stated the total amount of the settlement and provided that the same was received pursuant to the agreement approved by the Board and "in full compromise settle-

ment, accord and satisfaction of all compensation and claims for compensation" arising out of the injury. It also contained, just below the title, a provision reading:

"NOTICE: This receipt shall be executed in triplicate, one copy of which shall be kept by the employee, one copy by the insurance company, and one copy immediately filed with the Industrial Accident Board. Each space in receipt must be completely filled out and correctly dated at time of execution. Failure to observe above instructions will result in return of this receipt."

While the Statement of Facts does not so disclose, it appears from an exhibit filed by Brannon as an amendment to his "Motion for new trial", and the court below considered it a fact, that the Board, on the same date as its above described order approving the settlement, wrote the petitioner insurance carrier concerning the settlement as follows:

"This is to advise you that on the      day of           19    , the Board entered an order approving the compromise settlement agreement in the above cause. You are requested to obtain from the claimant a compromise settlement receipt evidencing the payment of the above amount as shown in the compromise settlement agreement and to send such receipt to this office for filing.

"Your attention is called to a rule of the Board which gives insurance carriers twenty days from date of entry of the order approving a compromise settlement agreement in which to make payment or tender payment without incurring liability for a penalty suit as provided in Section 5a of Article 8307, Revised Civil Statutes, 1925.

Yours very truly

cc J. W. Brannon
7611 Greenstone St.
Houston, Texas

cc Berniece Grieder

P. S. TO INSUROR: Please always give the Board's Number on all correspondence and receipts. I. A. B."

By saying "that the Board did not intend its order of approval to be final unless or until the plaintiff had received the full satisfaction of the accord", the court below evidently did not mean that further orders were contemplated, as in Petroleum Casualty Co. v. Lewis, Tex. Civ. App., 63 S. W. 2d 1066, error

refused. Nor could it properly have so meant, because there is nothing to suggest a purpose to issue additional orders, and the inference from the language of the one order made is to the contrary. But neither is there anything in the order making its legal effect contingent on future events. It purports to operate in the present. In a sense it does, perhaps, embody the settlement agreement, including the legalistic redundancies in the last sentence thereof. But the latter are far from clearly purporting to regulate the effect of the order, and even if it were otherwise, the result would be merely a conflict within the terms of the order. The terms of the receipt, if the latter could affect the intent of the order, are yet no more than an acknowledgment of funds, with the more or less usual reference to the reason or occasion for their payment. Such a receipt would not be an unusual thing even if taken upon payment of a compromise judgment theretofore entered. The cautious tendency of our profession to "guild the lily" is notorious. The requirement that the receipt be executed and returned as a condition to payment of the draft is of little significance. The procuring and keeping of explicit receipts for substantial disbursements is an ancient and still prudent business practice, and, considering the importance of the Board's function in cases of settlement, the receipt is an altogether proper record to be required and kept by the Board as well as by the insurer.

The letter of the Board, advising the insurer of its approval, certainly suggests anything but the idea that the approval order was in suspense until payment should be accepted by the claimant. It tells the insurer in so many words that the latter is, by reason of the order, then obligated to the claimant, in the amount of the settlement, and in case of delay in payment, subject to the same statutory penalties applicable to other cases of failure to pay under the Workmen's Compensation Law. In this connection, there was considerable evidence as to the practice of the Board, and under decisions such as Maryland Casualty Co. v. Hendrick Memorial Hospital, 141 Texas 23, 169 S. W. 2d 969, we are judicially aware of the practice of the Board and its construction of the governing statute, including Section 12 of Article 8307 concerning settlements. Such practice and construction since 1944 has been altogether different from that indicated in Petroleum Casualty Co. v. Lewis, supra, under which no order of approval was made until after payment was received and receipted for by the claimant. Since 1944 the Board has followed the practice pursued in the instant case and has considered its order approving the executory settlement to be the final and only approval required of it and to be forthwith and uncon-

ditionally effective so as to have the result indicated in its letter last above mentioned. In fact such letter is a form used by the Board as a result of this construction of the statute. The rule mentioned in said form letter was adopted by the Board long prior to the present suit and reads as follows:

"When the Board enters an order approving a compromise settlement agreement, under the provisions of Section 12 of Article 8307, the insurance carrier shall have twenty (20) days from and after the date of such approval of such compromise settlement agreement in which to pay, or tender such payment to such employee, the amount of such compromise agreement."

■ The rule clearly shows (a) the present practice of making a final approval order upon the executory settlement and (b) the Board's view that its order of approval has the immediate effect of substituting the settlement for the original cause of action, so as to render the insurance carrier forthwith indebted to the claimant in the agreed amount and therefore likely to incur the statutory penalties for delay in payment, but for the 20 day indulgence, which the rule accordingly grants. That such administrative construction of statutes merits our respect is well established. Big Lake Oil Co. v. Reagan County, Tex. Civ. App., 217 S. W. 2d 171, 173, er. ref; Dallas Title & Guaranty Co. v. Board of Ins. Com'rs., Tex. Civ. App., 224 S. W. 2d 332, 336, er. ref. In any event the Board's well recorded view of what it intends by its own order would seem to outweigh the questionable inference drawn below from other circumstances.

■■ Perhaps another thesis of the Court of Civil Appeals is this: that, as a matter of general law, accords or executory contracts of compromise are without legal effect, until acceptance by the claimant of the agreed sum or other thing promised by the debtor or defendant, so that up until such acceptance, the claimant may withdraw at his pleasure; that, such being the law, the aforementioned practice of the Board to the contrary is itself ineffective as purporting finally to approve something, which is (in the language below) "no settlement". But the first premise, if not clearly erroneous prior to Alexander v. Handley, 136 Texas 110, 146 S. W. 2d 740, has been so since 1941 when that important clarification of our law on the subject matter was written. While the decision recognizes the classic theory that a mere accord does not necessarily supersede the original claim, it may yet be said to stand for the general proposition that, in effect, the accord unbreached by the debtor is a defense against suit on the claim. And there is also a well established principle of general law; that, by way of novation, the original

claim is deemed superseded by the accord, if the latter clearly shows the mere promise of the debtor, as distinguished from the thing promised, to be intended as the "satisfaction". Gulf, Colorado & Santa Fe Ry. Co. v. Harriett, 80 Texas 73, 15 S. W. 556, and other cases collected in 1 Tex. Jur., Accord and Satisfaction, Section 40; Restatement, Contracts, Section 418; Williston, Contracts, Rev. Ed. Section 1846. In connection with the practical application of this latter rule, it is also said by modern and very respectable authority that such an intent is presumed to exist if the original claim is one of disputed validity and unliquidated. Restatement, supra, Section 419. This seems tantamount to saying that in the instant case, the accord would, as a matter of general law, be presumptively just the contrary of "no settlement" and in effect a promissory note of the insurer accepted by the claimant.

■ Such being the general law rules, and considering the policy of our workmen's compensation statute, we deem it the reasonable course to hold that the accord before us became, upon signature of the approval order, a substitute for the original claim. Obviously this statute, which created and defined the rights and correlative duties of workmen's compensation and integrated them with action of the Board, has an important bearing on the matter. For example, in Petroleum Casualty Co. v. Lewis * * * supra, and underlying decisions, it was held that by reason of Section 12 of Article 8307, supra, providing that the Board "may approve any compromise, adjustment, settlement or commutation 63 S.W. 2d 1068, made between the parties" in certain types of claims, and by reason of the general purposes of the Act, a settlement until approval is "void and wholly ineffective", without reference to general law rules of accord and satisfaction. See also Commercial Casualty Ins. Co. v. Hilton, 126 Texas 497, 505, 87 S. W. 2d 1081, 1084, 89 S. W. 2d 1116. Conversely, should it not follow that by virtue of the statute and the general law rules, as we have stated these to be, the Board's approval, once given to an accord, works the equivalent of a novation of the original claim? That such a construction of the statute has been maintained over a period of years by the Board is, as stated, persuasive of its correctness. Certainly the words of Section 12, supra, are far from forbidding it. Assuming that there was some small benefit to the claimant under the old practice in that he enjoyed perhaps more time in which to change his mind, the same would be counterbalanced by the corresponding right of the insurer, and such practice evidently gave them both a somewhat arbitrary power to delay and confuse the important operations of a highly busy administrative agency out of proportion to any benefits obtained.

The settlement proceedings involved in Texas Employers' Ins. Ass'n. v. Knouff, Tex. Civ. App., 271 S. W. 633, error refused, were under the old practice, and the decision is evidently cited below only for certain language tending to support the court's theory last above discussed. As already pointed out, the much later decision in Petroleum Casualty Co. v. Lewis, supra, cited as authority in Commercial Casualty Ins. Co. v. Hilton, supra, treats the effect of the old practice as a matter of construction of the workmen's compensation statute rather than one of general rules of accord and satisfaction. Moreover, the particular language of the Knouff case as to these rules is at variance with Alexander v. Handley, supra, and thus not now persuasive.

As to respondent Brannon's assignments below, complaining of submission of certain jury issues of the defendant-petitioner, assuming that these points might validly be raised as alternative to the point that the trial court was without any jurisdiction at all, they are yet irrelevant to our disposition of the case, since they are defensive and since the respondent abandoned the issue of fraud which was his only ground for the relief prayed for in his petition.

Finally, if respondent could be taken to have validly raised in both courts below a point to the effect that there was enough of a "settlement" finally approved by the Board to give the trial court jurisdiction to set it aside, and that the court should have set it aside because repudiated by respondent prior to satisfaction thereof, such a point, if logically possible, would yet not be well taken. Under the workmen's compensation statute and the general law, as we take them to be, and under the undisputed facts of the case, there was a valid accord, which superseded the original claim and was in the fullest sense a settlement, subject only to judicial cancellation for fraud or other equitable grounds, which the respondent pleaded, but thereafter abandoned.

It follows that the judgment of the Court of Civil Appeals must be reversed and the judgment of the trial court affirmed. It is so ordered.

Opinion delivered July 18, 1951.

Rehearing overruled October 3, 1951.