The HOME INDEMNITY COMPANY, Appellant,

v.

Porfirio R. RIOS, Appellee.

No. 13274.

Court of Civil Appeals of Texas, Austin.

June 3, 1981.

Rehearing Denied June 24, 1981.

Richard W. Chote, Flahive & Ogden, Austin, for appellant.

Jack C. Eisenberg, Byrd, Davis & Eisenberg, Austin, for appellee.

POWERS, Justice.

Appellee, Porfirio R. Rios, sued appellant, The Home Indemnity Company, to enforce a compromise settlement agreement which had been approved by the Industrial Accident Board, as permitted by Tex.Rev.Civ. Stat. Ann. art. 8307, § 12. In addition to his action to enforce the agreement, appellee brought a statutory cause of action in the same suit, seeking the attorney's fee and 12% penalty authorized by Section 5a of Article 8307.

This appeal involves only the action of the trial court in awarding such attorney's fee and penalty. We hold that the trial court, in awarding such fee and penalty, interpreted Section 5a erroneously. We therefore reverse its judgment and render judgment for appellant.

Appellee was injured on December 30, 1977, while in the employ of a company to which Home Indemnity had issued a policy of worker's compensation insurance. On August 21, 1979, appellee and Home Indemnity entered into a compromise settlement agreement whereby appellee was to be paid $27,000.00 and future hospital and medical expenses resulting from his injury. The agreement provided that the lump sum of $27,000.00 would be paid twenty (20) days after the agreement was approved by the Board. The Board approved the agreement on August 24, 1979.

On September 21, 1979, twenty-eight (28) days after the Board's approval, appellee filed suit in the 250th Judicial District Court of Travis County to enforce the agreement and collect the statutory attorney's fee and 12% penalty. Home Indemnity tendered, and Rios accepted, payment of the $27,000.00 on October 2, 1979, eleven (11) days after the suit was filed. Appellee continued, however, to prosecute his suit for attorney's fee and penalty. On final hearing, pursuant to a jury finding that $8,500.00 was a reasonable attorney's fee, the trial court entered judgment against Home Indemnity in that amount plus the $3,240.00 penalty. Appellant contends that the statutory attorney's fee and penalty may not be recovered in a suit to enforce a compromise settlement agreement. Appellee disagrees.

Sections 5 and 5a of Article 8307 must be read together. In pertinent part they provide:

"Sec. 5. All questions arising under this law, *if not settled by agreement of the parties interested therein* and within the provisions of this law, shall, except as otherwise provided, be determined by the Board . . . ." (Emphasis added).

"Sec. 5a. In all cases where the board shall make a *final order, ruling or decision as provided in the preceding section* and against the association, and the association shall fail and refuse to obey or comply with the same and shall fail or refuse to bring suit to set the same aside as in said section is provided, then in that event, the claimant in addition to the rights and remedies given him and the board in said section may bring suit where the injury occurred, upon said order, ruling or decision. If he secures a judgment sustaining such order, ruling or decision in whole or in part, he shall also be entitled to recover the further sum of

twelve per cent as damages upon the amount of compensation so recovered in said judgment, together with a reasonable attorney's fee for the prosecution and collection of such claim." (Emphasis added).

The issue then is whether a compromise settlement agreement, when approved by the Board in the manner followed in this case, constitutes a "final order, ruling or decision" within the meaning of Section 5a. The Board's approval of the agreement is entitled "Order."

Appellee cites *Insurance Co. of North America v. Escalante*, 484 S.W.2d 608 (Tex. Civ.App.—San Antonio 1972, writ ref'd n. r. e.), for the proposition that the Board's approval in the present case was a "final order, ruling or decision" within the meaning of Section 5a. That case interprets the decision in *Pacific Employers Insurance Co. v. Brannon*, 150 Tex. 441, 242 S.W.2d 185 (1951) and the *dicta* therein. The holding in the *Brannon* decision was limited:

> "[W]e deem it the reasonable course to hold that the accord before us became, upon signature of the approval order, a substitute for the original claim."

The "accord" spoken of by the Court was, of course, the compromise settlement agreement. The Court's holding was preceded by a discussion of the Board's interpretation of the pertinent parts of the Workmen's Compensation Law, and a rule of the Board that required payments pursuant to such agreements to be made within 20 days "from and after the date of (the Board's) approval." [1] In reference to that rule, the Court said that it clearly showed:

> "... the Board's view that its order of approval [rendered] the insurance carrier forthwith indebted to the claimant in the agreed amount and therefore likely to incur the statutory penalties for delay in payment, but for the 20 day indulgence, which the *rule* accordingly grants. That

such administrative construction of statutes merits our respect is well established." (Citations omitted) (Emphasis added).

While referring to the *Board's view* that an insurer was likely to incur the statutory penalties if the agreed amount was not paid within the 20 days allowed by the Board's rule, that issue was not before the *Brannon* court at all, for the plaintiff had sued the carrier to set aside the Board's order for fraud. He had not presented for payment the draft mailed to him by the carrier *on the day following the Board's approval.*

We believe that *Escalante* would be decided differently today, in light of the Board's new and different view of such compromise settlement agreements and how they should be enforced. Under the Board's view at the time of *Brannon*, no further action was required to make the compromise settlement agreement effective following the Board's approval. It was therefore reasonable to assume that nothing further was required before the claimant could institute suit on the statutory cause of action if payment was not timely made. In contrast, the present rule of the Board does require additional action by the Board if the carrier fails to make timely payment of the agreed sum. The present rule provides:

> "An insurance carrier shall have twenty days from and after the date of approval of a compromise settlement agreement in which to pay or tender payment to the injured employee of the amount approved by the board.... Failure to tender payment within such time shall cause the board *to immediately set such case for formal hearing for the purpose of invoking proper sanctions.*" (Emphasis added).

Tex.Indus.Accid.Bd. Rule 061.08.00.220, 2 Tex.Reg. 4322 (1977).

1. The Board's old rule, referred to in *Brannon*, and its present rule 061.08.00.220, each allows the carrier 20 days within which to pay sums due and payable under the compromise settlement agreement. Article 8307, § 5 provides 20-day deadlines in (1) giving notice that a party will not abide by a final ruling and decision by the Board and (2) filing suit to set aside the final ruling and decision by the Board. *There is no direct statutory requirement that amounts due under a compromise settlement agreement be paid within 20 days.*

A formal hearing is now required as a condition for invoking proper sanctions following a carrier's failure to make payment of the agreed amount within twenty (20) days of the Board's approval of the agreement.

Moreover, as we interpret Sections 5 and 5a of Article 8307, they do not grant the statutory cause of action in cases of this kind. The action, under the plain language of the statute, is authorized when:

1. The Board makes a final order, ruling or decision as provided in Section 5; and

2. The final order, ruling or decision is against the association; and

3. The association fails or refuses to bring suit to set aside the final order, ruling or decision, as provided in Section 5.

Section 5a expressly conditions the right to the statutory cause of action upon the occurrence of a condition described as "that event." "That event" is comprised of the three things listed above, *all* of which must "concur to constitute a whole and make 'that event,' upon the happening of which suit may be filed to have the award established by the court." *Mingus v. Wadley*, 115 Tex. 551, 285 S.W. 1084, 1088 (1926).

The first thing that must happen is the making by the Board of a "final order, ruling or decision" *relative to an award.* Our Supreme Court stated this requirement in *Pearce v. Texas Employers Ins. Ass'n*, 412 S.W.2d 647 (Tex.1967). The appellant in that case argued that Section 5 had the effect of repealing Section 12 of Article 8307, which authorizes the Board to approve compromise settlement agreements where "the liability of the association or the extent of the injury of the employee is uncertain, indefinite or incapable of being satisfactorily established ..." In overruling appellant's motion for rehearing, on application for writ of error, the Supreme Court said:

"The Court of Civil Appeals ... has held that Section 5, supra, by its terms is restricted to *awards* of the Board and *judgments* of a court of law ... thus, holding that Sec. 5, supra, refers only to *awards* and *judgments* and has no application to a compromise settlement agreement approved by the Board...."

The Supreme Court then went on to say the Court of Civil Appeals had correctly interpreted the statute and expressly approved its holding. *Pearce v. Texas Employers Ins. Ass'n, supra.* In *Barnes v. Bituminous Casualty Corp.*, 495 S.W.2d 5 (Tex.Civ.App.— Amarillo 1973, writ ref'd n. r. e.), the court held that the statutory cause of action may not be founded upon a compromise settlement agreement. We believe this decision correctly interprets the statutory provisions with which we are concerned, that is, Sections 5, 5a, and 12 of Article 8307.

Appellee points out that Section 5 literally and specifically mentions agreements of settlement and compromise. He reasons that an order approving such an agreement is, therefore, one literally "provided for" in Section 5, which is one condition stated in Section 5a for bringing the statutory cause of action there allowed the claimant.

There is little substance to this argument. While Section 5 does mention the situation where the parties settle by their agreement any questions arising under the Workmen's Compensation Law, it does so *only by way of excluding* such transactions from the operative provisions of the section which deal with "final rulings and decisions made by the Board." This implies that such a final ruling or decision by the Board is *not* necessary when the question is resolved by agreement of the parties. The exclusionary phrase in Section 5, referring to agreements made by the parties themselves, would be superfluous under appellee's interpretation, and therefore meaningless. All such phrases are presumed to have meaning in statutes of this kind. Furthermore, the word "order" is used in Section 5 to comprise the term "final ruling and decision," and is not used in the sense of any other action by the Board, such as approving compromise settlement agreements, for such agreements are expressly excluded from the section. Section 5a uses the word "order" in the same sense because it incorporates the usage of the word in Section 5.

We hold the district court erred in awarding appellee judgment for the penalty and attorney's fees provided under Section 5a. We reverse the judgment of the trial court and render judgment that appellee take nothing.

Reversed and Rendered.