SPRING INDEPENDENT SCHOOL DISTRICT, et al., Appellants,

v.

Elaine DILLON, Appellee.

No. 14221.

Court of Appeals of Texas, Austin.

Dec. 19, 1984.

Augustus T. White, Houston, for Spring ISD.

Jim Mattox, Atty. Gen., Kevin O'Hanlon, Asst. Atty. Gen., Mark W. Robinett, Austin, for Texas Educ. Agency.

Robert E. Hall, Law Firm of Bob Hall, Houston, for appellee.

Before PHILLIPS, C.J., and POWERS and GAMMAGE, JJ.

POWERS, Justice.

The Commissioner of Education, ruling that he lacked subject-matter jurisdiction, dismissed an administrative appeal taken to him by Elaine Dillon in her dispute with her former employer, Spring Independent School District. The State Board of Education affirmed the Commissioner's order and Dillon sued for judicial review in a district court of Travis County. Tex.Educ.Code Ann. § 11.13(a)–(c) (1972 & Supp.1984).[1] The district court reversed the agency order and remanded the dispute to the board of trustees of the school district, ordering that they afford Dillon an "evidentiary" or trial-type hearing of her complaints against the school district.

We will hold the district court correctly reversed the agency order. We will affirm to that extent the judgment rendered be-

---

1. Section 11.13 provides:

(a) Persons having any matter of dispute among them arising under the school laws of Texas or any person aggrieved by the school laws of Texas or by actions or decisions of any board of trustees ... may appeal in writing to the commissioner of education, who, after due notice to the parties interested, shall hold a hearing and render a decision without cost to the parties involved, but nothing contained in this section shall deprive any party of any legal remedy.

(b) The decisions of the commissioner of education shall be subject to review by the State Board of Education.

(c) Any person, county, or school district aggrieved by any action of the Central Education Agency may appeal to a district court in Travis County, Texas.... Upon trial the court shall determine all issues of law and fact.

low. We will, however, reform that judgment to require that the Commissioner, on remand, enter a final order proper in his judgment based upon his determination of the following: (1) whether, under the principles set forth in this opinion, he has jurisdiction of the dispute under § 11.13(a) of the Texas Education Code; and, if so, (2) whether Dillon's dispute with the school district falls within the scope of the administrative regulation found at 19 Tex.Admin. Code § 61.231(b)(1) (Rule 226.23.09.010) (1981), which provides for and governs hearings before local boards of trustees as to "grievances or controversies involving administrative actions or problems of school districts" when brought by "aggrieved parties."

## THE CONTROVERSY IN THE SCHOOL DISTRICT

Dillon was employed by the school district for the school year 1978–79. Her contract, which expired by its own terms at the end of the school year, specified that she work as coordinator of the Vocational Office Education ("VOE") Program at one of the high schools in the district. Dillon served in that position for the school year 1978–79, working under the immediate supervision of the principal of the school, Bobby J. Woodruff.

Various disputes arose between Woodruff and Dillon concerning the conduct of each. At the end of the school year, Woodruff prepared a required job-performance evaluation of Dillon's work. The evaluation was placed in her personnel file maintained by the school district. We assume the content of the evaluation amounted to an opinion by Woodruff that Dillon's work was unsatisfactory. (We find in the appellate record nothing which suggests the content of the evaluation).

The superintendent of the school district intervened in the dispute between Dillon and Woodruff. He was unable fully to resolve the dispute but determined that Dillon should be offered a contract for the succeeding year. Dillon was in due course offered a contract of employment for the succeeding year. But because Woodruff had recommended termination of the VOE Program for lack of student interest, in which recommendation the superintendent apparently concurred, the new contract offered to Dillon specified that she would work as an English teacher in the coming school year.

Dillon initially accepted the offer of re-employment as an English teacher. She reserved, in her acceptance, a right to complain further of her treatment by Woodruff. She did so in a grievance filed with the board of trustees of the school district. The board of trustees heard Dillon's complaints in a public meeting. It then investigated her complaints and rejected them, affirming nevertheless Dillon's re-employment as an English teacher for the coming school year. Dillon, however, unilaterally rescinded her previous acceptance of re-employment and sought administrative review of the trustees' decision by complaining to the Commissioner, as ostensibly authorized by the terms of § 11.13(a) of the Texas Education Code.

## ADMINISTRATIVE REVIEW BY THE COMMISSIONER

In Dillon's appeal to the Commissioner, she made the following allegations: (a) the school district arbitrarily discontinued the VOE Program, resulting in her being offered a lower-paid position, as an English teacher, for the succeeding school year; (b) the school district refused to remove from her personnel records the job-performance evaluation prepared by Woodruff; (c) the board of trustees violated an administrative rule,[2] in refusing to afford her the procedural benefits of a trial-type hearing when the trustees considered and determined her

2. Dillon refers to the rule found at 19 Tex.Admin.Code §§ 61.231–.252 (Rules 226.23.09.010–226.23.11.010) (1981). The rule, promulgated by the Texas Education Agency, governs hearings before local boards of trustees. See footnote 7, *infra,* discussing in detail the contents of the rule and listing the procedural benefits claimed by Dillon.

grievance against Woodruff;[3] and, (d) the board of trustees based its rejection of her grievance in part upon what the board learned in its ex parte investigation of her complaints against Woodruff, thereby violating the public meetings requirement of the Texas Open Meetings Act, Tex.Rev.Civ. Stat.Ann. art. 6252–17 (Supp.1984), and voiding the board's action in rejecting her grievance.[4]

The school district moved that the Commissioner dismiss Dillon's administrative appeal for want of subject-matter jurisdiction in the Commissioner. In a hearing conducted by the Commissioner's hearing officer, Dillon's counsel stated that Dillon's complaints in her administrative appeal would be limited to the first two enumerated in the preceding paragraph; that is, her complaints that the school district had arbitrarily discontinued the VOE Program and refused to remove from Dillon's personnel records the job-evaluation made by Woodruff. After hearing argument on the motion, the matter was apparently taken under advisement. In an order of February 7, 1980, the Commissioner dismissed Dillon's administrative appeal for want of subject-matter jurisdiction. He therefore did not decide Dillon's contention that the agency's rules 226.23.09.010–226.23.11.010 applied to her grievance so that the local board of trustees that heard her grievance was obliged to afford her a trial-type hearing attended by such things as representation by counsel, briefs, oral argument, the taking of testimony and documentary evidence, cross-examination of adverse witnesses, and so forth. Moreover, it is not clear to us that the statement made by Dillon's counsel was intended to waive this contention and, in any event, that matter is not briefed by the parties on appeal.

Implicit in the Commissioner's order, as shown by accompanying findings of fact and conclusions of law, is his determination that his jurisdiction under § 11.13(a) of the Texas Education Code is co-extensive with the general original jurisdiction of a district court of the State to review the actions of administrative agencies.[5] So

3. Dillon's grievance against Woodruff was set forth in a letter she composed and delivered to the board of trustees of the school district. In the letter, she directed the following complaints against Woodruff: (a) the nature of his evaluation of her job-performance and the bases for it; (b) his "harassment" and "threats" against her; (c) his denying her an opportunity to recruit students for the VOE Program so that it might attract sufficient student interest to justify its continuance for another year; and (d) his deliberate attempt to hinder the objectives of the VOE Program.

4. We hold that we need not decide Dillon's novel contention that the Texas Open Meetings Act entitled her to trial-type procedural benefits, for we base our decision here solely on the Commissioner's erroneous holding that he did not have jurisdiction to hear and determine the dispute between Dillon and the school district, owing to her failure to base her claims on a legal, statutory, or constitutional right.

5. Administrative agencies are created, of course, to exercise legislative power. The power delegated to a particular agency may be "quasi-legislative," such as rulemaking, or it may include a power to decide administrative controversies arising under those rules or relevant statutes—a "quasi-judicial" power. But the latter is not the judicial power exercised by a district court under the Constitution and statutes of the State.

There is a rather clear line of distinction between the two.

The district courts of the State have a jurisdiction which includes the power to hear and determine "all causes of action whatever for which a remedy or jurisdiction is not provided by law or this Constitution, and such other jurisdiction, original and appellate, as may be provided by law." Tex. Const.Ann. art. V, § 8 (emphasis added).

Under the constitutional phrase "as may be provided by law," the Legislature has chosen to enact many statutes which confer upon district courts, or some of them, a special statutory jurisdiction to review the final orders of specified administrative agencies. An example is found in § 11.13(c) of the Texas Education Code where it is provided that a "person ... aggrieved by any action of the Central Education Agency may appeal to a district court in Travis County, Texas...." See generally Schwantz v. Texas Department of Public Safety, 415 S.W.2d 12, 14–16 (Tex.Civ.App.1967, writ ref'd) where many similar statutes are listed in a footnote. Nevertheless, the extent of the Legislature's power to confer upon a district court the authority to review administrative action is limited by the separation-of-powers principle found in art. II, § 1 of the State Constitution. Tex. Const.Ann., supra, art. II, § 1. See, e.g., Chemical Bank & Trust Company v. Falkner, 369 S.W.2d 427 (Tex.1963), in which the Court refus-

much is implied in his determination that he had no jurisdiction of Dillon's dispute with the school district because: (a) she did not assert a statutorily or constitutionally protected right of re-employment by the school district, in any capacity, her contract for the preceding year having expired by its own terms; and (b) Woodruff's evaluation of her job performance was not alleged by her to have risen to the level of "a substantial infringement of a *legal right* . . ." (emphasis added).[6]  *See generally* Hubert, Dismissals of Public-School Employees in Texas—Suggestions for a More Effective Administrative Process, 44 Tex.L.R. 1309, 1311–21 (1966).

Dillon made further administrative appeal to the State Board of Education, as authorized by the terms of § 11.13(b) of the Texas Education Code.  The State Board of Education affirmed the Commissioner's or-

der and adopted his findings of fact and conclusions of law.  Dillon sued for judicial review, asserting that her suit was authorized by the terms of § 11.13(c) of the Texas Education Code and governed by the provisions of § 19 of the Administrative Procedure and Texas Register Act (AP-TRA), Tex.Rev.Civ.Stat.Ann. art. 6252–13a (Supp.1984).

## JUDICIAL REVIEW IN THE DISTRICT COURT

■ Dillon, in her petition in district court, enlarged considerably her complaints and requested additional forms of relief. Her claims may be summarized as follows:

(a) She was subjected "to unfair harassment and ill treatment," by Woodruff, during the school year 1978–79.

---

ed to follow a statutory provision that directed the reviewing court to determine what constituted "public necessity" justifying the issuance of a new bank charter.

Conversely, under the phrase "all causes of action whatever for which a remedy or jurisdiction is not provided by law or this Constitution," the district courts of the State have original general jurisdiction to hear and determine a person's allegations that the actions of an administrative agency have adversely affected his *constitutional or property rights. See, e.g., Brazosport Sav. & L. Ass'n v. American Sav. & L. Ass'n.,* 161 Tex. 543, 342 S.W.2d 747 (1961). Causes of action of this kind fall within the constitutional jurisdiction of the district courts *even though* there exists no statute which vests in a district court a special jurisdiction to review the actions of an administrative agency. *See also Trapp v. Shell Oil Co.,* 145 Tex. 323, 198 S.W.2d 424 (1946); *Board of Water Engineers v. McKnight,* 111 Tex. 82, 229 S.W. 301 (1921); and *Railroad Commission of Texas v. Rau,* 45 S.W.2d 413 (Tex.Civ.App.1931, writ dism'd) for other illustrations of the kinds of adjudicatory power that may *not* be delegated to an administrative agency because they ordinarily belong solely to the judicial department of government. *See also Gregg v. Delhi-Taylor Oil Corp.,* 162 Tex. 26, 344 S.W.2d 411 (1961) and *Foree v. Crown Central Petroleum Corporation,* 431 S.W.2d 312 (Tex.1968) for a discussion of statutes which purport to vest administrative agencies and courts with concurrent jurisdiction over a given class of controversies.

6.  The Commissioner's findings of fact and conclusions of law were as follows:

Findings of Fact
1.  [Dillon] specifically disclaims any cause of action asserting relief as a result of the abridgment of any constitutionally protected right regarding the non-renewal of [her] employment contract with [the district] as a VOE coordinator.
2.  [Dillon] specifically disclaims any cause of action asserting relief from the abridgment of a constitutionally protected right regarding [the district's] written evaluation of [her] performance as a VOE coordinator.
3.  [The district] has not elected to adopt probationary and continuing contracts pursuant to the provisions of the Tex.Educ.Code Ann. § 13.101 *et seq.* (1972).
Conclusions of Law
It is well-settled that teachers employed by school districts pursuant to term contracts have no expectancy of re-employment and that no cause of action for non-renewal shall lie in absence of the abridgment of a constitutionally protected right.  (citations omitted) As [Dillon's] pleadings specifically disclaim any cause of action based on "provisions of Federal law, statutory or constitutional," it is concluded that [she] has stated no cause of action over which the State Commissioner of Education may properly exercise jurisdiction. Additionally, it is concluded that employee evaluations are purely administrative in nature and the State Commissioner of Education will not substitute his judgment regarding such matters for that of the school district in absence of facts conclusively showing an abuse of discretion resulting in a substantial infringement of a legal right to which Petitioner is entitled. . . .

(b) The actions of the board of trustees, in denying her grievance, and the State Board of Education, in not giving her relief therefrom, were arbitrary and capricious, not supported by substantial evidence, and based upon incorrect interpretations of the applicable law and administrative regulations.

(c) The "hearing" afforded her by the board of trustees was inadequate because she was not allowed the trial-type procedural benefits enumerated in 19 Tex.Admin.Code, *supra*, §§ 61.231–.252.[7]

7. 19 Tex.Admin.Code, *supra*, §§ 61.231–.252 is found in Subchapters I and J of the regulations of the "Texas Education Agency." Under the heading "Hearings Before Local Boards," we find that the Commissioner "shall prescribe procedures for hearings held before local governing boards of trustees," which procedures shall "be in accordance with applicable law" (§ 61.-231(a)). Local boards of trustees are instructed to "adopt written procedures providing for orderly hearings and appeals of *aggrieved parties* ...." (emphasis added). Implicit in a portion of the following section, § 61.231(b)(1), is the possibility that the term "aggrieved parties" is *not* intended to mean the same thing it means in § 11.13(c) of the Tex.Educ.Code Ann., *supra*, or in APTRA § 19(a). The terms of § 61.231(b)(1) provide as follows:

> (1) In grievances or controversies involving administrative actions or *problems of school districts, aggrieved parties* shall be afforded a full hearing before the board of trustees of the district....

(emphasis supplied). No broader scope can be implied than the scope implicit in the phrase "problems of school districts." This phrase must be accommodated with the narrower meaning implicit in the term "persons aggrieved," for the combined use of the two renders ambiguous the class of persons entitled to a hearing before the local board of trustees attended by the procedural benefits listed in § 61.252. At minimum, we would suppose the regulations apply to a schoolteacher who is, during the term of his contract, dismissed with cause. (And the regulations have been so applied in those cases. *See District Trustees, Etc. v. Central Education Agency*, 256 S.W.2d 151, 154 (Tex.Civ.App.1953, writ ref'd n.r.e.); *Bear v. Donna Independent School Dist.*, 85 S.W.2d 797, 798 (Tex.Civ.App.1935, writ dism'd). But nothing in the regulations purports to *limit* their applicability to such cases, so as to exclude therefrom Dillon's case where she was not dismissed for cause during the term of her contract, but had an entirely different kind of controversy arising out of her employment.) These regulations raise the following questions: (a) what kinds of controversies are included in § 61.231(b)(1), entitling those involved to the trial-type procedures listed in § 61.252 and the right of appeal to the Commissioner as authorized by § 61.253; (b) does § 61.231(b)(1), quoted above, encompass *all* possible "dispute(s) arising under the school laws of Texas," within the meaning of § 11.13(a) of the Tex.Educ.Code Ann., *supra*; (c) are there controversies within the terms of both the regulation *and* § 11.13(a) of the Texas Education Code so that those affected adversely have both a statutory right of appeal to the Commissioner as well as a regulatory right in that regard; (d) are there controversies to which § 61.231(b)(1) *does not* apply but § 11.13(a) *does* apply, so that affected persons have a right of appeal to the Commissioner but not the procedural rights contemplated by the regulation; (e) are there controversies to which, in the Commissioner's view, the regulation applies but not the statute; and (f) are there controversies to which neither the statute nor the regulation applies, so that affected persons have neither the procedural benefits of the regulation nor the statutory right of appeal to the Commissioner under § 11.13(a) of the Tex. Educ.Code Ann., *supra?*
Section 61.252 of the regulation lists the procedural benefits applicable to an "aggrieved party," such as representation by counsel, a benefit extended to "all interested parties," the introduction of evidence, cross-examination of "witnesses offered by other parties," oral argument, the filing of briefs, and other matters. These are the benefits claimed by Dillon in the present case and denied her by the board of trustees, which preferred to handle her grievance by an exercise of its investigatory power in lieu of its adjudicatory power.
Section 61.231(b)(1) is for the Commissioner's interpretation in the first instance, particularly when that regulation and the statute (§ 11.-13(a)) are stated in the broadest possible terms. Notwithstanding our views about the *possible* interpretation of the regulation, it remains for the Commissioner to give the *controlling* interpretation as to what kinds of controversies the regulation applies. This is the explicit direction of § 11.52(*l*) of the Tex.Educ.Code Ann., *supra*. Until the Commissioner has construed the regulation, we are unable to say *whether* his construction is plainly erroneous or inconsistent with the regulation or some applicable statute, *whether* Dillon was erroneously denied the benefits of the regulation, or even *whether* this Court has jurisdiction of the controversy. *If* she *was* legally entitled to the benefits of the regulation, because the Commissioner so construes it, or if his contrary construction is plainly erroneous or inconsistent with a statute or the regulation itself, then we would, of course, have jurisdiction. But the regulation is vague indeed as to what kind of controversies it applies and we may not proceed to evaluate its scope until the

(d) The board of trustees, in basing its decision in part upon its ex parte investigation, violated the Texas Open Meetings Act.

For relief, Dillon requested that the district court set aside the administrative decisions in her case; that she be reinstated in her former position as coordinator of the VOE Program until removed therefrom "in accord with applicable law";[8] that all records of her "reassignment" and Woodruff's evaluation of her job performance be removed from her personnel file and destroyed; that she recover money damages from the school district for its "wrongful actions and inactions"; and that she recover attorney's fees, interest, and general relief.

Dillon moved for summary judgment, which the trial court granted on the ground that the local board of trustees had not afforded her a trial-type hearing as required by 19 Tex.Admin.Code, *supra*, §§ 61.231–.252 *and* the Texas Open Meetings Act. Impliedly, the trial court thereby overruled the school district's own motion for summary judgment which asserted, among other things, that the trial court lacked jurisdiction of the dispute in that Dillon was not "aggrieved" in the sense implied in § 11.13(c) of the Texas Education Code and § 19(a) of APTRA. The substance of the school district's motion apparently was that Dillon's claims did not rest upon a legal injury; and, if adjudicated by the court, its judgment would constitute an impermissible intrusion by the court into a matter purely administrative in nature and therefore committed to the *exclusive* jurisdiction of the school authorities. The trial-court judgment also dismissed, apparently without prejudice, Dillon's common-law cause of action for money damages. The dismissal was founded on the ground

that a decision in that regard would be "premature" until she was permitted a trial-type hearing before the board of trustees of the school district. Dillon has not filed a cross-point directed at this portion of the trial-court judgment, and we express no opinion thereon, although it is readily apparent that the school district has no authority to adjudicate such a cause of action and order an award of money damages in compensation of Dillon's alleged injuries, if her pleading is indeed, as we suppose, intended to allege a common-law cause of action.

The trial-court judgment orders that Dillon's dispute be remanded to the school district with instructions that she be given "a full evidentiary hearing concerning the merits of her original grievance," which hearing "shall comply with the procedural requirements prescribed by the rules of the Texas Education Agency concerning hearings before local boards." The "rules" referred to are evidently those found at 19 Tex.Admin.Code, *supra*, §§ 61.231–.252. Finally, the trial-court judgment recites that it *is* a final judgment and "[t]he Court does not retain jurisdiction of this case except to the extent necessary to enforce its judgment." This appeal ensued.

## DISCUSSION AND HOLDINGS

We hold the district court correctly reversed the final order of the Commissioner, as affirmed by the State Board of Education. It is true, as the Commissioner found, that Dillon expressly declined to base her complaints against the school district upon a claim of legal injury or a statutory or constitutional right to re-employment by the district; nor did she base her request for removal of the job evaluation on grounds of that character. Never-

---

Commissioner has done so. *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945).

**8.** We are informed by the parties that the school district did not choose to offer again the VOE Program after the 1978–79 school year in which Dillon served as coordinator of the program. There is, therefore, a serious question in the case of whether a district court may, in effect,

control the course offerings of a local school district by compelling the district to reinstate Dillon in her former position. This would appear to be a matter within the exclusive jurisdiction of the school authorities but we defer the matter for future resolution, if and when it arises, after resolution by the Commissioner of the extent of his jurisdiction in the dispute and the meaning of 19 Tex.Admin.Code, *supra,* §§ 61.231(b)(1).

theless, it does not follow, in our view, that the Commissioner had no power, under § 11.13(a) of the Texas Education Code, to hear and determine her dispute with the school district.

The Commissioner is charged with many duties and given many statutory powers in administering the school laws of the State. The same is true of the Central Education Agency as a whole. Simultaneously, local boards of trustees are vested by the Legislature with "the *exclusive* power to manage and govern the public free schools of the district" (emphasis added). Tex.Educ. Code Ann., *supra*, § 23.26(b). Notwithstanding the word "exclusive," the Texas Education Code *itself* quite explicitly *divides* the power of management and government of the schools of an independent school district.[9] For example, state-level school authorities, of which the Commissioner is the executive officer, have dis-

cretionary power that supersedes local authority in such matters as textbooks, course requirements, and numerous functions and activities included within the Foundation School Program which the State subsidizes. *See, e.g.,* Tex.Educ.Code Ann., *supra*, §§ 12.13–16, 12.61–62; 16.-051–52, 16.103, 16.176, 16.177, and 16.204.

State-level school authorities claim, by regulations set forth in 19 Tex.Admin.Code, *supra*, a similar power over local school authorities in an astonishing array of other matters (including some that are, perhaps, related indirectly to the present dispute). These other matters are in addition to the procedural requirements applicable to local-board hearings, enumerated in 19 Tex.Admin.Code, *supra*, §§ 61.231–.252. These other matters include: a prohibition against coercion of professional employees by other such employees (§ 61.143); a re-

---

**9.** Generally speaking, public education is a State function that originates in the Legislature's duty "to establish and make suitable provision for the support and maintenance of an efficient system of public free schools." Tex. Const.Ann. art. VII, § 1 (1955). The relevant statutes are now found in the Texas Education Code, dealing with all manner of school affairs.

The statutory framework for the government of public education establishes a basic division between government and financing at the State level and government and financing at a local level, the latter being effectuated through local school districts, in the present case an "independent school district."

The State agency for the government of public education is the Central Education Agency, a body of limited and delegated powers (although they are broadly expressed), all other powers of school government being vested by the Legislature in the boards of trustees of the numerous independent school districts. (§ 11.01). The Central Education Agency is composed of four entities: (1) the State Board of Education, a body charged to formulate policies and rules "for carrying out the duties placed on it or the Central Education Agency by the legislature" (§§ 11.21, 11.24); (2) the State Board for Vocational Education, a body composed of the members of the State Board of Education when they act in matters concerned with vocational education not necessary here to recite (*id.*); (3) the State Department of Education, which is the professional, technical, and clerical staff of the Central Education Agency (§ 11.61); and (4) the Commissioner of Education, having the following duties among others:

a. The general duty of executing the school laws and the rules and regulations of the State Board of Education (§ 11.25).

b. *The power to interpret the rules and regulations of the State Board of Education,* his opinions in that regard being "binding for observance on all officers and teachers." (§ 11.52(1)).

c. The performance of adjudicative functions, together with the State Board of Education, in deciding appeals from local school authorities (§ 11.13(a), (b)).

Appellant, the Spring Independent School District, is one of the independent school districts authorized by Chapter 23 of the Texas Education Code. It is governed by its board of trustees, a "body corporate" having, among others, the following powers and duties:

a. The "exclusive power to manage and govern the public free schools of the district." (§ 23.26(b)).

b. The power to "adopt such rules, regulations, and by-laws as they may deem proper." (§ 23.26(d)).

c. Such other powers and duties as may be granted or imposed by the Code or other provisions of law. (§ 23.25).

d. The power to contract with superintendents, principals, teachers and other executive officers. (§ 23.28(a)).

e. The power to require the teaching of courses in addition to those required by the Code. (§ 21.108).

A local board of trustees is, generally speaking, vested with all educational functions "not specifically delegated to the Central Education Agency ..." (§ 11.01).

quirement that teachers be placed in positions for which they are qualified (§ 97.-98(1)); a rather vague and opaque direction that teachers, "as individuals," be made to "feel" they are encouraged to teach well (§ 97.98(2)(D)); requirements concerning consultation with teachers and the responsibilities of supervisory leadership with regard to teachers (§ 97.98(4)(H)); a requirement that local school boards enact policies concerning evaluation and retention of teachers (§ 97.94(4)(B)); and other, rather vague and broadly stated requirements dealing with teacher performance evaluations (§§ 97.98(4)(F), (J)). This listing is, of course, not intended to mean that any of these regulations *are* applicable to the case before us, for it is not clear to us that we would have jurisdiction of any dispute about those matters. (Nor are we confident that we even understand properly these "regulations"—they are not a paragon of precision, objectiveness, consistency, or clarity.) Rather, the foregoing regulations and statutory provisions are listed simply to demonstrate that state-level school authorities have or claim discretionary power in numerous matters that pertain to local school operation, management, and government, and this power must in a particular instance be accommodated with other contrasting statutory provisions that vest other discretionary powers in local school authorities.

Drawing the division line between local and state jurisdiction, under the Texas Education Code, is a complex, large, technical, and perhaps even a delicate task, requiring the consideration of many different public policies and factors implicit in the Texas Education Code. The division line may, of course, vary with the context and the particular matters in controversy. Drawing the division line in a particular kind of dispute is ill-suited for judicial determination; it is especially well-suited to administrative determination assisted by the special knowledge and experience of the Central Education Agency, particularly when it is obvious that matters of state as well as local education policy and practice are involved and the Commissioner is given the

express power to interpret and assign meaning to 19 Tex.Admin.Code, §§ 61.-231(b)(1), *supra,* which he has not yet done. Tex.Educ.Code Ann., *supra,* § 11.52(*l*).

▋ It is the Commissioner's duty to determine his administrative jurisdiction in the first instance because, we hold, he has previously in this case interpreted erroneously the provisions of § 11.13(a) of the Texas Education Code when he limited his jurisdiction to a "cause of action" based upon the violation of a "legal," statutory, or constitutional right. Section 11.13(a) does not, by its terms, so limit his jurisdiction on appeal in a "dispute" arising under the school laws; and the powers vested in the Commissioner and the other component authorities of the Central Education Agency demonstrate vividly and unequivocally the existence and scope of the *administrative* powers of state education authorities, so that a "dispute ... arising under the school laws of Texas" may well implicate *that* power even though the dispute does not rise to the level of a "cause of action" cognizable in a district court, whether a common law cause of action based upon the violation of a constitutional right or a legal injury or a statutory cause of action within a district court's special statutory jurisdiction, such as that conferred in § 11.13(c). The persons entitled to seek relief from the Commissioner under § 11.13(a) include, *in addition* to "any person aggrieved by the school laws," those persons "having any matter of dispute under the school laws," suggesting quite clearly two distinct classes of persons entitled to appeal *to the Commissioner* and obtain a decision, even if both classes are not entitled to *judicial* review by a district court under § 11.13(c) or under a district court's inherent jurisdiction under the Constitution.

In summary, the Commissioner has the undoubted power to determine the extent of his jurisdiction implicit in the phrase "any dispute ... arising under the school laws of Texas ...," as that phrase is used in § 11.13(a) of the Texas Education Code. He must do so in the present case because, we hold, he has erroneously set the thresh-

old of his jurisdiction too high when he limited it to a "cause of action" asserting a legal, constitutional, or statutory right. If he determines on remand that he has jurisdiction of Dillons' dispute, under a proper construction of § 11.13(a) of the Texas Education Code, then he must determine whether the nature of Dillon's complaints entitled her, as an "aggrieved party," to the procedural benefits of 19 Tex.Admin. Code §§ 61.231–.252, which on their face apply in "grievances or controversies involving administrative actions or problems of school districts ...." brought by "aggrieved parties." *Id.*, § 61.231(b)(1). The Commissioner's construction of both the statute and the regulations will depend upon his interpretation thereof in light of other statutes, the pertinent regulations, and perhaps, administrative policies applicable to the matter.

We must await the Commissioner's construction of these statutory and regulatory provisions in order that we do not propel ourselves into the province reserved for local and state-level school authorities. The ultimate object of any future judicial review of the Commissioner's construction will be, no doubt, the meaning he will assign to the statutory and regulatory provisions we have mentioned above. His interpretation of § 11.13(a) of the Texas Education Code will not be controlling on a reviewing court, but it will, of course, merit respect. *Pacific Employers Ins. Co. v. Brannon,* 150 Tex. 441, 242 S.W.2d 185

(1951). Conversely, the Commissioner's interpretation of the administrative regulations *will* be of controlling effect, because a part of the regulation itself, unless plainly erroneous or inconsistent with some statutory or regulatory provision. *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945); *Sunset Express v. Gulf, C. & S.F. Ry. Co.,* 154 S.W.2d 860 (Tex.Civ.App.1941, writ ref'd w.o.m.).

Therefore, we remand the dispute to the State Board of Education with instructions that it be further remanded to the Commissioner in order that he may determine whether he has jurisdiction of the dispute under § 11.13(a) of the Texas Education Code; and, if so, whether the dispute under review falls within the meaning and scope of 19 Tex.Admin.Code § 61.231(b)(1) so that Dillon would be entitled to the hearing and procedural benefits contemplated by §§ 61.231–.252 of those regulations; [10] the Commissioner being required by our judgment to enter a final order, proper in his judgment, based upon such determinations. We reform the district-court judgment accordingly; and, as reformed, we affirm that judgment.

PHILLIPS, C.J., not participating.

10. Several portions of the Texas Education Code provide for a "hearing" before particular kinds of administrative action may be taken in regard to a teacher. In these portions of the Code, the "hearing" implied is a trial-type hearing with the affected teacher's right thereto being statutory, whether or not it rises to the level of a constitutional right to a hearing. None of them would seem to apply to one in Dillon's position. *See* Texas Educ.Code Ann., *supra,* § 2.06 (dismissal for treason and subversion); § 3.06 (cancellation of teacher's certificate for offenses against retirement system); § 13.046 (cancellation of teacher's certificate for incompetence and other grounds); §§ 13.104, 13.112 (decision not to renew employment of teacher under probationary contract, or discharge during year, of teacher under probationary contract or continuing contract, or release at end of year of teacher under

continuing contract) on any of specified grounds such as immorality, conviction of felony, drunkeness, incapacity, or neglect of duties); § 13.113 (suspension of teacher for any of the foregoing); § 13.213 (complaints that teacher has violated a rule or provision of the code of ethics and standard practices of the teaching profession); § 13.214 (same).

In § 21.205, the Code provides for a hearing to be held, at a teacher's request, when he or she is notified that the school district will *not* review a term contract. It was not effective at the time of the present dispute. *See* 1981 Tex.Gen.Laws, ch. 765, § 21.205, at 2848. In any event, however, it is undisputed that Dillon *was* offered a contract for another year because the district chose to *renew* her employment for another year, albeit in another capacity.