Madeline MOORE, Appellant,

v.

CENTRAL EDUCATION AGENCY,
et al., Appellees.

No. 3–88–205–CV.

Court of Appeals of Texas,
Austin.

March 29, 1989.

Truman W. Dean, Jr., Waterman, Dean, Groth & Moore, P.C., Houston, for appellant.

Jeffrey J. Horner, Bracewell & Patterson, Houston, Ann E. Swenson, Asst. Atty. Gen., Austin, for appellees.

Before POWERS, GAMMAGE and JONES, JJ.

POWERS, Justice.

Madeline Moore, a teacher employed by the Alief Independent School District, sued in district court for judicial review of a decision by the Commissioner of Education, given in his administrative review of Moore's complaint against the school district. The court below declined to reverse the Commissioner's decision, and gave judgment in favor of the school district and the Commissioner. Moore appeals. Tex. Educ.Code Ann. § 11.13 (1972 & Supp. 1989). We will affirm the judgment below.

## THE CONTROVERSY

The school district employed Moore to teach music in the school year 1983–84. During that year she taught and evaluated her students, assigned them homework, and awarded them grades.

In the school year 1984–85, however, the district assigned her quite different duties as the teacher in a "special assignment class," which was a special "study hall" for students with disciplinary problems. In her work with the "special assignment class," Moore did not give grades, assign homework, or teach a subject that required student learning or evaluation. In that year, Moore requested that the school district assign her to "level" two on the new "career ladder" system—a system established by the Legislature in July 1984 when it amended extensively the Texas Education Code. *See* Tex.Educ.Code Ann. §§ 13.301–13.323 (Supp.1989) (establishing "career ladder" system, effective September 1, 1984); *Id.*, § 16.057 (authorizing $2,000 annual supplement for teachers assigned to "level" two of the "career ladder"); *see generally* 1984 Tex.Gen.Laws, 2nd C.S., ch. 28, at 117.

The school district refused Moore's request for assignment to "level" two; the Commissioner sustained the school district's decision. Moore has appealed to this Court from the district-court judgment upholding the Commissioner's decision.

Moore contends the decisions of the school authorities were arbitrary and capri-

cious because the decisions rest on an erroneous interpretation of the relevant statutory provisions, and the regulations promulgated thereunder. The school authorities' interpretation holds that assignments to "level" two were forbidden unless the teacher occupied the position of "classroom teacher" *at the time of the assignment.* Moore contends that a proper interpretation of the statutes and regulations permitted her assignment to "level" two based upon her position as a "classroom teacher" in the school year (1983–84) *preceding* her request for the assignment. The issue is, of course, one of statutory construction, determined in light of the proper deference due the administrative interpretation.

## THE "CAREER LADDER" STATUTE

The new Code provisions added in 1984 included §§ 13.302 and 13.303. These directed school districts to assign their teachers to "levels" in "an appraisal process" and under "criteria" promulgated by the State Board of Education. In § 13.301, the Legislature established four such "levels," and set out five factors by which a teacher's proper "level" should be determined by the school district: "performance, experience, job-related education, advanced academic training, and job assignments." In subsequent sections, the Legislature gave more specific instructions relative to some of these factors. Section 13.304 authorized five possible ratings that might be given a teacher's "performance," ranging from "unsatisfactory" to "clearly outstanding." Concerning the factors of "experience" and "advanced academic training," the Legislature designated in §§ 13.305–13.310 several qualifying combinations of academic degrees and teaching experience pertaining to the various "levels." Section 13.319 declared that the assignment "decision of the district is final and is subject to appeal only if the decision ... was arbitrary and capricious or made in bad faith."

The new Code provisions were adopted in July 1984, to be effective in the coming school year of 1984–85. In the same month, the Texas Education Agency issued a document entitled "Explanations and Interpretations," giving the agency's views of the new Code provisions. Among other things, the document instructed school districts that: (1) "level" 2 was "activated" for the school year 1984–85; (2) the $2,000 supplement would be "available only for classroom teachers"; (3) in making assignments to "level" two, in the school year 1984–85, school districts must consider "only experience and education obtained *prior* to September 1, 1984," and "[a]cceptable past performance, education and advanced course work shall be determined based upon" the years *preceding* the year in which the assignment to "level" two is made. (Emphasis added). Nothing in the document specified a meaning to be assigned the term "classroom teacher."

The State Board of Education promulgated new regulations, effective June 7, 1985, to implement the "career ladder" system. 10 Tex.Reg. 1677 (1985) (recodified at 19 Tex.Admin.Code § 149.71). At the times material to the present case, § 149.71(a), (b), and (c) of the regulations instructed school districts as follows:

(1) "Each teacher shall be assigned to a position on the career ladder ..., based on performance, experience, job-related education, and/or advanced academic training, job assignments, and other requirements."

(2) In the school year 1984–85, "all teacher career ladder assignments and salary allotments shall be made in accordance with the" document entitled "Explanations and Interpretations," issued in July 1984; and, for school years thereafter, such assignments shall be made in accordance with the provisions of the following subsection of the regulations.

(3) For "career ladder" assignments in the school year 1985–86, and thereafter, the term "classroom teaching" means (with qualifications listed thereafter) teaching in an instructional setting by one having primary responsibility "for planning, delivering, evaluating, and reporting ... student learning of the essential elements as required" in a part of the Code pertaining to the public-school curriculum.

(4) In the school year 1984–85, a school district may use a 1984–85 performance

evaluation in making assignments to "level" two, if no such evaluation was made in 1983–84, if it was destroyed, or if it provided no category of performance above "satisfactory" and the individual making the evaluation is not available; otherwise, the school district may not use "current school year performance evaluations" in making "career ladder" assignments, except in exceptional circumstances not pertinent in the present case.

## DISCUSSION AND HOLDINGS

Moore reasons that all of the relevant provisions described above demonstrate "an intention to reward classroom teachers during one year ... based entirely upon the *happenings* during the *previous* school year" (emphasis added); and because she *was* a classroom teacher in the previous year (1983–84), she was eligible for assignment to "level" two. We disagree.

██ We believe the school district and the Commissioner correctly interpreted the relevant provisions when they employed the following rationale. Section 13.301 of the Code directs that a school district consider five *discrete* factors in making "career ladder" assignments, namely "performance, experience, job-related education, advanced academic training, and job assignments." The regulations provide in 19 Tex.Admin.Code § 149.71(a) that assignments made in the school year 1984–85 (which included the assignment requested by Moore) shall be made in accordance with the "Explanations and Interpretations" issued by the Texas Education Agency in July 1984. That document provided expressly that the $2,000 supplement for "level" two shall be "available only for classroom teachers." If Moore was *not* a classroom teacher in 1984–85, when "level" two was "activated" and the supplement made "available", she was not eligible for assignment to "level" two because § 13.301 of the Education Code made "job assignments" a necessary factor in making the assignment decision, quite *apart* from the other factors of performance, experience, job-related education, and advanced training.

██ Although no provision in the 1984 document defined the term "classroom teacher," the term implied in context some restrictive meaning as opposed to the unqualified and more general term "teacher." Consequently, the school district was obliged to assign *some* meaning to the term "classroom teacher," and it reasonably chose the definition contained in § 149.71(b)(1) of the new regulations, even though that definition was not literally applicable to assignment decisions made in the 1984–85 school year. Because Moore was not a "classroom teacher" under that definition, in the year she requested assignment to "level" two, she was not eligible under the governing provisions of the "Explanations and Interpretations" issued in July 1984.

Concerning Moore's argument that the Code provisions, the regulations, and the document of July 1984 demonstrate an intention that the assignment decision be based solely upon "happenings" in the preceding year, we note that all the provisions invoked by Moore involve not "job assignments" but the *other* factors listed in § 13.301. (Moore invokes § 13.308 of the Code, which requires that entry to level two be based on *performance* in the preceding year; a part of the July 1984 document stating that only *experience* and *education* before September 1, 1984 may be considered in assignments made in 1984–85; and 19 Tex.Admin.Code § 149.71(c)(1)(F) and (G) (since repealed), referring to the circumstances in which 1984–85 *performance evaluations* may be used in making assignment decisions in that school year.)

Concerning Moore's objection to the school district employing in 1984–85 the definition of "classroom teaching," found in § 149.71(b)(1), when it was explicitly made applicable only in the school year 1985–86 and thereafter, we conclude the school district's action was not unreasonable. The "Explanations and Interpretations" of July 1984 expressly directed the school district to assign teachers to "level" two but restricted the "level" two salary supplement to "classroom teachers," a

term not defined by the agency in the document. The cognate term "classroom teaching" *was* defined, however, in the newly promulgated § 149.71(b)(1), and it appears to us that the district was reasonable in selecting that meaning as the most probable meaning implied in the agency's earlier document of July 1984.

We cannot conclude that the interpretation settled upon by the school authorities is plainly erroneous or inconsistent with any provisions in the relevant statutes or regulations, or in the July 1984 document issued by the agency. Consequently, their interpretation is controlling in the case. *See Spring Independent School Dist. v. Dillon,* 683 S.W.2d 832, 841 (Tex.App.1984, no writ).

We therefore affirm the judgment below.