The CITY OF HOUSTON, Appellant

v.

Christopher RHULE, Appellee.

No. 01–09–01079–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

June 7, 2012.

Alton J. Hall Jr., Orelia Darcele Holley, Cozen O'Connor, Dean G. Pappas, Mary M. Markantonis, Pappas & Suchma PC, Houston, TX, for Appellant.

John S. Powell, The Powell Law Firm, Pearland, TX, for Appellee.

Panel consists of Justices KEYES, SHARP, and MASSENGALE.

## OPINION ON REHEARING

EVELYN V. KEYES, Justice.

Following the issuance of our opinions in this case on July 21, 2011, appellant, the City of Houston ("the City"), filed a motion for rehearing and a motion to dismiss the appeal on jurisdictional grounds.[1] We grant rehearing to address both the City's motion for rehearing and its motion to dismiss. We withdraw our opinion and judgment of July 21, 2011 and issue this opinion and judgment in their stead.

In its motion to dismiss, the City contends that the trial court and this Court lack jurisdiction to entertain this suit because appellee, Christopher Rhule, failed to exhaust his administrative remedies before bringing the suit.

In four issues on appeal, the City argues that (1) the trial court lacked subject matter jurisdiction over Rhule's damages to the extent that the requested damages exceeded remedies allowed by the Texas Workers' Compensation Act (the "Act" or "TWCA"), and, thus, the trial court erred in denying the City's plea to the jurisdiction; (2) the trial court erred in submitting a question to the jury that allowed it to award Rhule damages for physical pain as a result of the City's breach of the settlement agreement; (3) the trial court erred in entering judgment on the jury's award of damages for mental anguish because there was no evidence of Rhule's propensity for mental anguish at the time the parties entered into the settlement agreement; and (4) the trial court's award of attorney's fees was erroneous because Rhule failed to establish any damages that

---

1. A jurisdictional issue may be raised at any time. See Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 445 (Tex.1993).

would support an award of attorney's fees, or, alternatively, Chapter 38 of the Civil Practice and Remedies Code does not authorize an award of attorney's fees against a municipality.

We deny the motion to dismiss and affirm the judgment of the trial court.

## BACKGROUND

Rhule, a firefighter for the Houston Fire Department, suffered a permanent on-the-job spinal injury on February 25, 1988. He timely filed a workers' compensation claim with the Industrial Accident Board, now the Texas Workforce Commission (the Commission or the TWC).[2] The Board ruled in Rhule's favor and issued an award that required the City to provide Rhule with "Lifetime Medical Care and Treatment" for his spinal injury, including pain management. The City appealed the results of the administrative proceeding to the 281st District Court of Harris County, in cause number 89–26686, seeking to set aside the award.

In lieu of trying the case to the jury, the parties reached a settlement agreement which provided that Rhule was to receive $36,000 and that the City was discharged and released from any claim Rhule might have for workers' compensation benefits or for other claims arising from his injury, "except that CHRISTOPHER A. RHULE shall receive lifetime open reasonable and necessary medical [expenses] for the injuries made the basis of this claim as provided by the [TWCA] with a mutually agreed upon doctor" (the "Settlement Agreement"). The trial court entered an agreed judgment to this effect in cause number 89–26686 on August 31, 1990 (the "Agreed Judgment"). The Agreed Judgment set aside the final award made by the Industrial Accident Board in the administrative proceedings.

The City honored the terms of the Agreed Judgment for a number of years, including paying Rhule's bills for office visits with his agreed-upon treating physician, his pain medication, and the installation of a pain pump. Then the pain pump began to fail. Rhule's treating physician, Dr. Alvarez, as well as Dr. Elizabeth Duncan, a respected pain specialist hired by the City without Rhule's knowledge, both recommended that the pain pump be replaced. However, the City, which had changed risk managers, determined that the pain pump and other medications and treatments sought by Rhule and his physician were not reasonable, necessary, and related to the 1988 work injury.[3] In addition to refusing to replace the pain pump, the City decided to quit paying for Rhule's physician visits and his pain medications as not reasonably necessary.

Rhule eventually filed suit against the City in the 281st District Court of Harris

2. The Texas Workers' Compensation Commission was created in 1989 to replace the Industrial Accident Board. It was subsequently abolished effective September 1, 2005, and its functions were transferred to a new division of the Texas Department of Insurance, the Texas Workforce Commission. *See Sw. Bell Tel. Co. v. Mitchell*, 276 S.W.3d 443, 444 & n. 3 (Tex.2008) (citing Act of Dec. 12, 1989, 71st Leg., 2d C.S., ch. 1, §§ 2.01–.09, 17.01, 1989 Tex. Gen. Laws 7, 115 (see former TEX. REV. CIV. STAT. ANN. art. 8308–2.01 et seq., codified in 1993 as Chapter 402 of the Texas Labor Code) and Act of May 29, 2005, 79th Leg., R.S., ch. 265, §§ 1.003, 8.001, 2005 Tex. Gen. Laws 469, 469–70, 607–08).

3. Rhule alleges, in response to the City's motion for rehearing and motion to dismiss, that in 2004 or 2005, the City changed risk managers and "[t]hose new Risk Managers, Cambridge Integrated Services Group, instituted a program of negative review of long-term injury cases" and of "arbitrarily cutting off long term compensation of City of Houston employees and past employees."

County, cause number 2005–79440, for breach of the Settlement Agreement. Rhule sought damages for "out-of-pocket expenses, incidental expenses, loss of the 'benefit of the bargain,' cost of reasonable medical care and treatment in the past, cost of medical care and treatment which will in all reasonable medical probability be required in the. future, physical pain and suffering in the past ..., mental anguish damages ..., nominal damages, attorney's fees necessary to bring and prosecute this action, [and] costs of court." Alternatively, Rhule sought specific performance of the Settlement Agreement and actual damages, costs of court, and attorney's fees. Rhule also sought a declaratory judgment to clarify his rights under the Settlement Agreement, specifically concerning his right to ongoing lifetime medical expenses relating to his injury. Rhule also specifically sought attorney's fees under Chapters 37 and 38 of the Civil Practice and Remedies Code.

The City filed a plea to the jurisdiction, arguing that Rhule's breach of contract claim and request for declaratory relief were barred. The trial court denied the plea to the jurisdiction and the parties proceeded to a trial before a jury.[4] Prior to trial, the City paid for a replacement pain pump and reinstituted payment for Rhule's office visits and pain medications. It then demanded that Rhule drop this suit. Rhule refused.

The jury found that the City failed to comply with the Settlement Agreement, and it determined that Rhule was entitled to $50,000 for past physical pain, $75,000 for past mental anguish, and $2,500 for out of pocket expenses. The jury also found that Rhule was entitled to attorney's fees in the amount of $53,000 for trial, $10,000

for an appeal to the Court of Appeals, and $20,000 for an appeal to the Texas Supreme Court.

The City filed a motion for judgment notwithstanding the verdict, asking the trial court to eliminate the award for past physical pain and past mental anguish and to enter judgment that "Rhule recover mental anguish damages, out of pocket expenses, and attorney's fees only." The City argued that damages for physical pain cannot be recovered on a breach of contract claim and that Rhule had failed to provide any evidence to show that he was entitled to mental anguish damages for breach of contract. The trial court denied the City's motion and entered judgment on the verdict. The City appealed.

## MOTION TO DISMISS

In its motion to dismiss for lack of jurisdiction, filed after our July 21, 2011 opinion issued but before this Court lost plenary jurisdiction, the City argues that its appeal must be dismissed for lack of jurisdiction because Rhule's claim was not a claim for breach of contract, but instead was a claim for denial of benefits; therefore, Rhule's exclusive remedy lay under the TWCA. The City argued that Rhule

failed to exhaust his administrative remedies by failing to first present his claim and dispute to the Industrial Accident Board, now known as the Department of Insurance—Division of Workers' Compensation (DWC) within six months from the time such dispute arose and prior to filing his suit as required by the statute in effect at the time of his on-the-job injury.

In other words, the City contends that Rhule was required to treat his claim that

4. The record does not contain the trial court's ruling on the plea to the jurisdiction, and it is not clear when or how the declaratory judg-

ment claims were dropped. The case was tried on Rhule's breach of contract claims, and no declaratory judgment was issued.

the City breached the Settlement Agreement as a claim that the City improperly denied him benefits, which had to first be presented to the Industrial Accident Board ("IAB"). The City makes this argument even though the claim was originally submitted to the IAB in 1988, the claim was settled, and the City's alleged breach occurred in 2004—fourteen years after the agreement was reached and entered as an Agreed Judgment of the court. The City ignores the history of the case, including the fact that Rhule did present his original claim to the IAB and was awarded lifetime reasonable and necessary medical care by the Board, an award the City resisted and sued to set aside, resulting in the Settlement Agreement. Rhule argues that the City should be estopped to deny the history of this case between its original denial of benefits in 1988 and its breach of the Settlement Agreement in 2004 and their implications under the TWCA. We agree with Rhule.

The TWCA specifically provides, in Labor Code section 408.021, that "[a]n employee who sustains a compensable injury is entitled to all health care reasonably required by the nature of the injury as and when needed." Tex. Labor Code Ann. § 408.021(a) (Vernon 2006). A "compensable injury" is defined, in relevant part, as "damage or harm to the physical structure of the body" that "arises out of and in the course and scope of employment." Id. § 401.011(10), (26) (Vernon Supp.2011).A "[m]edical benefit" obtainable under the Act "means payment for health care reasonably required by the nature of a compensable injury and intended to ... cure or relieve the effects naturally resulting from the compensable injury ..., or ... enhance the ability of the employee to return to or retain employment." Id. § 401.011(31).

Labor Code section 408.005 provides for "settlements and agreements" of claims for benefits. See id. § 408.005 (Vernon 2006); Act of May 22, 1993, 73rd Leg., ch. 269, §§ 1, 5(2), 6, 1993 Tex. Gen. Laws 987 (adopting Labor Code, effective September 1, 1993, as non-substantive revision of Texas Workers' Compensation Act, articles 8308–1.01 et seq., Vernon's Texas Civil Statutes). In addition to setting out procedures for reaching valid and binding settlement agreements, section 408.005 provides that "[a]n employee's right to medical benefits as provided by Section 408.021 may not be limited or terminated." Tex. Labor Code Ann. § 408.005(b).

The law governing compromise settlement agreements in a workers' compensation case seeking medical benefits for on-the-job injuries is well established. In 1976, the Amarillo Court of Civil Appeals observed that the predecessor to Labor Code section 408.021, Texas Revised Civil Statutes Annotated article 8306, section 7,[5] "provided in substance that the insurance carrier shall furnish such medicines and medical care as may reasonably be required to cure and relieve at any time after the time of the injury." Moore v. Lumbermen's Mut. Cas. Co., 533 S.W.2d 171, 173 (Tex.Civ.App.-Amarillo 1976, writ ref'd n.r.e.) (citing Tex.Rev.Civ. Stat. Ann. art. 8306, § 7). Likewise, the court recognized that the predecessor to Labor Code section 408.005, article 8307, section 12, provided that " '[w]here the liability of the association (insurer) or the extent of the injury of the employee is uncertain, indefinite or incapable of being satisfactorily established, the board may approve any compromise, ... settlement or commuta-

---

**5.** See Act of Mar. 28, 1917, 35th Leg., R.S., ch. 103, § 7, 1917 Tex. Gen. Laws 269, 272, repealed by Act of Dec. 29, 1989, 71st Leg., 2d C.S., ch. 1, § 16.01(7), 1989 Tex. Gen. Laws 1, 114 (current version at Tex. Lab.Code Ann. § 408.021 (Vernon 2006)).

tion thereof made between the parties.'" *Id.* (quoting TEX.REV.CIV. STAT. ANN. art. 8306, § 12).

■ Likewise, "[i]t is well established that a compromise settlement agreement, when approved by the Board, is binding upon the parties to it unless and until the agreement is lawfully set aside." *Id.; see Cigna Ins. Co. v. Rubalcada,* 960 S.W.2d 408, 412 (Tex.App.-Houston [1st Dist.] 1998, no pet.) (holding that compromise settlement agreement "is binding on the parties and may be set aside only on grounds that would entitle a party to rescission at common law" and that it "supersedes the original claim"); *Seale v. Am. Motorist Ins. Co.,* 798 S.W.2d 382, 386–87 (Tex.App.-Beaumont 1990, writ denied) (holding workers' compensation claimant who had obtained district court judgment awarding her lifetime medical benefits appropriately brought suit in district court against carrier based upon carrier's indication it would not pay for weight reduction treatments in connection with claimant's back injury); *Esco v. Argonaut Ins. Co.,* 405 S.W.2d 860, 863 (Tex.Civ.App.-Beaumont 1966, writ ref'd n.r.e.) (holding that compromise settlement agreement made while workers' compensation case was pending and approved by court was valid accord superseding original claim, was subject only to judicial cancellation for fraud or other equitable grounds, and was binding on both plaintiff and defendant). The grounds for setting aside such a settlement agreement are those that would entitle a party to rescission at common law, including fraud, mutual mistake, or other equitable grounds. *See, e.g., Rubalcada,* 960 S.W.2d at 412.

■ Finally, it is well established that breach of a settlement agreement reached under the TWCA is not treated like an initial claim for benefits for an on-the-job injury, for which administrative remedies must be exhausted. *See Gregson v. Zurich Am. Ins. Co.,* 322 F.3d 883, 885–87(5th Cir.2003) (holding workers' compensation claimant was not required to initiate and exhaust administrative procedures with TWC before bringing claims in court against insurer who had agreed to provide all necessary and reasonable medical coverage but then denied coverage for prescription medication incident to claimant's approved medical treatment; administrative review of insurer's denial of such treatment was not available under TWCA).

The Amarillo Court of Civil Appeals explained the law in *Barnes v. Bituminous Casualty Corp.* as long ago as 1973:

The defense of lack of trial court jurisdiction for failure to first secure action by the Industrial Accident Board on the disputed expense [agreed to under compromise settlement agreement] will not support ... summary judgment. When the compromise settlement agreement executed by the parties was approved by the Board, there was a valid accord superseding Barnes' pending compensation benefits claim and subject only to judicial cancellation. *Pacific Employers Ins. Co. v. Brannon,* 150 Tex. 441, 242 S.W.2d 185 (1951). The approved agreement compromised and settled not only Barnes' disability benefits, but both past and future medical expense liability as well. No action has been taken, either in this proceeding or otherwise, to have the approved settlement agreement judicially set aside; in fact, plaintiffs' pleadings are drafted to allege a breach and to enforce the terms of the approved settlement agreement, and evidence the opening statement made in their appellate brief that "(t)his is a suit on a contract." So long as the agreement is subsisting, it is binding upon the parties to it, *Lowry v. Anderson–Berney Bldg. Co.,* 139 Tex. 29, 161 S.W.2d 459 (1942),

and the Board has no further jurisdiction of the matter made the subject of the approved settlement agreement. 495 S.W.2d 5, 8 (Tex.Civ.App.-Amarillo 1973, writ ref'd n.r.e.).

The law set forth in *Barnes* is still good law today. There is no question under this law that Rhule and the City entered into a valid and binding settlement agreement that superseded the award made to Rhule by the Industrial Accident Board. Under that agreement, the City obligated itself to pay for Rhule's reasonable and necessary medical care for his spinal injury for life, including the care recommended by an agreed-upon physician, as set out in the Settlement Agreement, to alleviate Rhule's ongoing pain "naturally resulting from the compensable injury" and to "enhance [his] ability ... to return to or retain employment." *See* TEX. LABOR CODE ANN. § 401.011(31).

There is no contention in this case that proper procedures were not followed at the time the 1990 Settlement Agreement was reached and approved by the court as an Agreed Judgment. Moreover, the City made no attempt to set aside the Settlement Agreement, and its performance under that Agreement for fourteen years—well outside the statute of limitations for setting aside such an agreement—persuasively argues that it recognized the validity and binding nature of the Agreement.

The City does not present any argument or authority that would support ignoring Labor Code sections 408.021, 408.005, and 408.011, which define compensable injuries under the TWCA and provide for lifetime medical care where reasonably required by the nature of the injury and for settlement of claims brought under the Act in binding and valid settlement agreements. Nor does the City present any argument or authority that would support extending the doctrine of exhaustion of administrative remedies to claims of breach of a settlement agreement under the TWCA. Therefore, we hold that the City's argument that Rhule's claim is a claim for denial of benefits subject to the law in effect in 1988 and that it is not a claim for damages for its breach of the Settlement Agreement in 2004 is without merit.

■ Furthermore, the City presents no argument for why it is not estopped to deny the history of this case, and we hold that it is so estopped. *See Lomas & Nettleton Co. v. Huckabee*, 558 S.W.2d 863, 864 (Tex.1977) (per curiam) (holding homeowners were estopped to assert claims against escrow agent for second insurer asserting invalidity of first insurance policy where claims were so inconsistent with homeowners' prior successful allegation of coverage under first policy as to be repugnant to justice); *Horizon Offshore Contractors, Inc. v. Aon Risk Servs.*, 283 S.W.3d 53, 69 (Tex.App.-Houston [14th Dist.] 2009, pet. denied) (stating that doctrine of judicial estoppel bars party who has made sworn statement in prior proceeding from maintaining contrary position in subsequent proceeding); *Cook Composites, Inc. v. Westlake Styrene Corp.*, 15 S.W.3d 124, 136 (Tex.App.-Houston [14th Dist.] 2000, pet. dism'd) (holding that, under doctrine of quasi-estoppel, party is precluded from asserting right to disadvantage of another where doing so would be inconsistent with party's previous position).

We conclude that the City's motion to dismiss this case for lack of jurisdiction due to Rhule's failure to exhaust administrative remedies before bringing this suit for breach of the Settlement Agreement is without merit. We therefore deny the motion and turn to the merits of the City's appeal.

## THE CITY'S APPEAL

On appeal, the City argues that its conduct in handling medical care for Rhule's workers' compensation injury is protected by governmental immunity and that the scope of the waiver of that governmental immunity is limited to compensation Rhule would have been entitled to under the TWCA. It argues that it is immune to claims for damages that exceed remedies allowed by the TWC; that the exclusivity provision in the TWCA precludes workers who bring claims under the Act from seeking damages for personal injuries sustained in the course of their employment, including damages for pain and suffering and mental anguish, which are limited to personal injury actions;[6] and that the TWCA does not provide for recovery of attorney's fees. Therefore, it argues, the trial court lacked subject matter jurisdiction over Rhule's claims for damages for physical pain and mental anguish, as well as his claim for attorney's fees. Thus, the court erred in denying the City's plea to the jurisdiction based on lack of subject matter jurisdiction.

Rhule argues that the City's immunity to workers' compensation claims has been waived by the Legislature, and that, by settling his claims and entering the Settlement Agreement in accordance with the provisions in the TWCA, the City waived its immunity both from suit and from liability for breach of that agreement. He further argues that his damages for breach of the Settlement Agreement are contract damages and that a special relationship

exists between the parties to a contract for the lifetime provision of medical care reached in accordance with the provisions of the TWCA, such that foreseeable non-economic damages, including damages for pain and suffering and mental anguish, are recoverable for its breach. He argues that, in his own case, pain and suffering and mental anguish were foreseeable consequences of the City's breach of the Settlement Agreement, which provides for lifetime medical care, including pain management, and, therefore, he is entitled to recover damages for both his physical and his mental suffering. He also argues that he is entitled to recover his attorney's fees incurred as a result of the City's breach.

We consider each of these arguments.

### A. Plea to the Jurisdiction

In its first issue, the City argues that it has not waived its immunity to Rhule's damages and attorney's fees claims, and, because of its immunity, the trial court erred in failing to dismiss Rhule's suit for lack of jurisdiction.

#### 1. Standard of Review

■■■ A plea to the jurisdiction challenges the trial court's subject matter jurisdiction to hear the case. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000). Subject matter jurisdiction is essential to the authority of a court to decide a case and is never presumed. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 443 (Tex.1993). The existence of subject matter jurisdiction is a question

---

**6.** The exclusivity provision of the TWCA provides, "Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee." TEX. LABOR CODE ANN. § 408.001 (Vernon 2006). The for-

mer version of the exclusivity provision stated that workers whose injuries are subject to the TWCA "shall have no right of action against their employer or against any agent, servant or employer of said employer for damages for personal injuries...." *Aranda v. Ins. Co. of N. Am.,* 748 S.W.2d 210, 214 (Tex.1988) (quoting former TEX.REV.CIV. STAT. ANN. art. 8306, § 3 (Vernon Supp.1988)).

of law. *State Dep't of Highways & Pub. Transp. v. Gonzalez,* 82 S.W.3d 322, 327 (Tex.2002). Therefore, we review the trial court's ruling on a plea to the jurisdiction de novo. *Id.* Governmental immunity from suit defeats a trial court's subject matter jurisdiction. *Id.*

 Governmental immunity has two components—immunity from liability and immunity from suit. *Tooke v. City of Mexia,* 197 S.W.3d 325, 332 (Tex.2006). A unit of state government is immune from suit and liability unless the state consents. *See Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999). Immunity from suit defeats a trial court's subject matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Id.* Immunity from liability protects the state from money judgments even if the Legislature has expressly given consent to sue. *Id.*

### 2. Waiver of Immunity

Civil Practice and Remedies Code section 101.028 waives a municipality's immunity from claims under the TWCA. This statute provides:

> A governmental unit that has workers' compensation insurance or that accepts the workers' compensation laws of this state is entitled to the privileges and immunities granted by the workers' compensation laws of this state to private individuals and corporations.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.028 (Vernon 2011). The TWCA, in turn, provides that "[a]n employee who sustains a compensable injury is entitled to all health care reasonably required by the nature of the injury as and when needed," that "[a]n employee's right to medical benefits as provided by section 408.021 may not be limited or terminated," and that a claim that an employer limited or terminated medical benefits to which the employee was entitled may be compromised and set-

tled. *See* TEX. LABOR CODE ANN. §§ 408.005(b), 408.021.

 "When the state contracts, it is liable on contracts made for its benefit as if it were a private person." *Gen. Servs. Comm'n v. Little–Tex Insulation Co.,* 39 S.W.3d 591, 594 (Tex.2001) (citing *Fed. Sign v. Tex. S. Univ.,* 951 S.W.2d 401, 405 (Tex.1997)). Although by entering into a contract a governmental entity waives its immunity from liability for breach of the contract, it "does not, merely by entering into a contract, waive immunity from suit." *Tex. A & M Univ.-Kingsville v. Lawson,* 87 S.W.3d 518, 520 (Tex.2002); *Little–Tex Insulation Co.,* 39 S.W.3d at 594. The supreme court has, however, recognized the legislature's "express waiver" of a governmental unit's immunity both from liability and from suit for workers' compensation benefits claims. *City of La Porte v. Barfield,* 898 S.W.2d 288, 294 (Tex.1995), *superseded by statute on other grounds, Travis Cent. Appraisal Dist. v. Norman,* 342 S.W.3d 54 (Tex.2011). Moreover, a plurality of the supreme court has held that "when a governmental entity is exposed to suit because of a waiver of immunity, it cannot nullify that waiver by settling the claim with an agreement on which it cannot be sued." *Lawson,* 87 S.W.3d at 521. Thus, "enforcement of a settlement of a liability for which immunity is waived should not be barred by immunity." *Id.*

The supreme court in Lawson addressed the reasoning the City uses here. *See id.* at 521–22. It acknowledged that "a suit for breach of a settlement agreement is separate and apart from the suit on the settled claim," and it reasoned that "[a]llowing suit against the government for breach of an agreement settling a claim for which immunity has been waived does not interfere with the Legislature's policy choices." The court further stated,

This all assumes, of course, that a governmental entity would not, in settling a suit for which immunity has been waived, undertake an obligation that exposes it to liability much greater or different than that which it faced from the original claim. But we think this assumption is a realistic one. A settlement of a claim trades unknowns—such as what the evidence will be, and how a jury will view it—for knowns—obligations that are more accurately assessable. In reaching a settlement, the government is guided by local counsel to help gauge the degree of exposure to liability and the fairness of the settlement. Once the Legislature has decided to waive immunity for a class of claims, the inclusion of settlements within the waiver is consistent with that decision. *Id.* at 522.

■ Here, by entering into the Settlement Agreement settling Rhule's workers' compensation claim, the City waived its immunity from liability under that agreement and became liable as if it were a private person. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.028; *Lawson,* 87 S.W.3d at 520. Moreover, the legislature's waiver of the City's immunity from suit for the purposes of Rhule's original workers' compensation claim also waived the City's immunity from suit for Rhule's suit to enforce the Settlement Agreement. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.028; *Lawson,* 87 S.W.3d at 521. Thus, we conclude that the City is liable for breach of the Settlement Agreement just as any private employer would be liable for breach of an agreement to provide medical benefits due to a compensable injury under the TWCA. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.028; *Lawson,* 87 S.W.3d at 521; *Little–Tex Insulation Co.,* 39 S.W.3d at 594; *see also Liberty Mut. Fire Ins. Co. v. Crane,* 898 S.W.2d 944, 948 (Tex.App.-

Beaumont 1995, no writ) (stating, in context of breach of settlement agreement of workers' compensation claim, "This suit is based on a settlement agreement that was incorporated into an agreed judgment. Because a consent judgment is a written agreement, it should be interpreted as a contract with general rules relating to construction of contracts applicable.").

The City argues, however, that "[t]he scope of the waiver in connection with a breach of the [Settlement Agreement] should be limited to the initial scope of the waiver. Specifically, the waiver provided by the [Workers' Compensation] Act." Thus, the City argues that its liability should be limited to the benefits that were authorized by the Workers' Compensation Act and that the trial court lacked subject matter jurisdiction over Rhule's claims for damages falling outside those limits, namely, damages for pain and suffering, mental anguish, and attorney's fees.

The City's argument misconstrues the plain language of the governing statutes and case law set out above, which unambiguously provides that an employee of a municipality who has suffered an injury compensable under the TWCA may recover exactly the same damages for breach of an agreement settling his claims for medical benefits under that Act as an employee of a private company that breached an agreement to provide medical benefits under the TWCA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.028. Thus, in this case, Rhule may recover damages from the City for the City's breach of an agreement to provide lifetime medical benefits set out in an agreed and duly promulgated judgment under the TWCA exactly as if the City were a private employer. The only question remaining, therefore, is whether an employee whose employer breached an agreement to provide him with lifetime pain management benefits awarded to him

for the compensable injury under the TWCA is entitled to recover damages for physical pain and mental anguish he suffered as a result of the breach.[7]

The City cites *Reata Construction Corp. v. City of Dallas* to support its claim. *See* 197 S.W.3d 371 (Tex.2006). We conclude, however, that *Reata Construction* is distinguishable from the present case, as, in that case, the City of Dallas waived its immunity merely by seeking affirmative relief, not by settling a claim by entering a binding and enforceable contract. *See id.* at 373.

This case is more analogous to cases interpreting the effect of statutory limitations on recoverable breach of contract damages under Local Government Code section 271.153.[8] In *City of Mesquite v. PKG Contracting, Inc.,* the Dallas Court of Appeals concluded that "statutory limitations on PKG's recoverable damages do not deprive the trial court of subject matter jurisdiction to adjudicate PKG's breach of contract claims." 263 S.W.3d 444, 448 (Tex. App.-Dallas 2008, pet. denied); *see also Kirby Lake Dev. Ltd. v. Clear Lake City Water Auth.,* 320 S.W.3d 829, 840 (Tex.2010) ("The purpose of section 271.153 is to limit the amount due by a governmental agency on a contract once liability has been established, not to fore-

close the determination of whether liability exists."); *City of Houston v. S. Elec. Servs., Inc.,* 273 S.W.3d 739, 744 (Tex. App.-Houston [1st Dist.] 2008, pet. denied) (holding pleadings alleged sufficient facts to establish waiver of immunity from suit and to defeat plea to jurisdiction and declining to determine plaintiff's damage claim through plea to jurisdiction).

We conclude that Rhule established that the City waived its immunity from suit on his claim for breach of the Settlement Agreement and that the City is liable for damages on Rhule's claims like any private person. *See Little Tex. Insulation Co.,* 39 S.W.3d at 594; *Jones,* 8 S.W.3d at 638–39; *S. Elec. Servs., Inc.,* 273 S.W.3d at 744. Any alleged statutory limitations on Rhule's recoverable damages did not deprive the trial court of subject matter jurisdiction to adjudicate Rhule's breach of contract claims. *See PKG Contracting,* 263 S.W.3d at 448. Thus, the trial court had subject matter jurisdiction over the entirety of the suit, and it did not err in denying the City's plea to the jurisdiction.

We overrule the City's first issue.

## B. Recoverable Damages

In its first, second, and third issues, the City argues that claimants are not entitled

---

7. The dissent adopts the City's misconstruction of the law and predicates its argument upon the misconstruction without referencing or distinguishing the controlling statutes and case law.

8. We note, however, that this case does not arise under section 271.153. That statute provides waiver of immunity from suit for "[a] local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to ... subchapter [I of chapter 271 of the Local Government Code]." *See* TEX. LOCAL GOV'T CODE ANN. § 271.152 (Vernon 2006). Chapter 271 governs "a written contract stating the essential terms of the agreement for

providing goods or services to the local governmental entity." *Id.* § 271.151(2) (defining "Contract subject to this subchapter"). Damages for breach of a contract subject to subchapter 271 are limited to "the balance due and owed by the local governmental entity under the contract as it may have been amended," as well as "the amount owed for change orders or additional work" and interest. *Id.* § 271.153(a). Consequential and exemplary damages and damages for unabsorbed home office overhead are expressly excluded. *Id.* § 271.153(b). By contrast, immunity to suit under the TWCA is waived by section 101.028 of the Civil Practice and Remedies Code.

to recover damages for past physical pain or for mental anguish in a suit arising from the settlement of a workers' compensation claim and that Rhule is not entitled to recover such damages in this case. In its second issue, the City argues that the trial court erred in submitting a jury question permitting an award of damages for physical pain on Rhule's breach of contract claim. In its third issue, the City argues that the evidence was insufficient to support the jury's award of mental anguish damages on Rhule's breach of contract claim.

The City argues that the exclusivity provision of the TWCA precludes damages for pain and suffering and mental anguish for breach of a settlement agreement under that Act, just as it precludes personal injury damages for claims for benefits made in administrative proceedings under the Act. Therefore, it argues, it is immune under the Act from liability to Rhule to the extent he seeks damages for pain and suffering and mental anguish. However, we have already determined that the legislature's waiver of a governmental entity's immunity from suit on a workers' compensation claim also applies to waive immunity from suit for enforcement of a settlement of that claim and that the City is liable for breach of that settlement agreement to the extent a private person would be liable. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.028; *Lawson*, 87 S.W.3d at 521–22; *Barfield*, 898 S.W.2d at 294. The question, therefore, is whether pain and suffering and mental anguish damages are recoverable as consequential damages for breach of a contract for the provision of lifetime medical care, including pain management, made to settle a claim under the TWCA. We hold that they are recoverable in an appropriate case.

*1. Recovery of Damages for Pain and Suffering and Mental Anguish for*

*Breach of an Agreement Settling a Workers' Compensation Claim*

 Generally, the measure of damages for breach of contract is that which restores the injured person to the economic position he would have enjoyed if the contract had been performed. *Mood v. Kronos Prods., Inc.*, 245 S.W.3d 8, 12 (Tex.App.-Dallas 2007, pet. denied). These may include consequential damages, or those damages that "result naturally, but not necessarily, from the defendant's wrongful acts." *Stuart v. Bayless*, 964 S.W.2d 920, 921 (Tex.1998) (per curiam) (quoting *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816(Tex.1997)). Consequential damages are not recoverable, however, unless the parties contemplated at the time they made the contract that such damages would be a probable result of the breach. *Id.* Thus, to be recoverable, consequential damages must be foreseeable and directly traceable to the wrongful act and must result from it. *Id.*

 In this regard, damages for mental suffering may be recoverable for breach of contract, but "the anguish or distress of mind must be shown to have been such a necessary and natural result of the breach of contract as that the party breaching it will be held to have contemplated such mental suffering." *City of Dallas v. Brown*, 150 S.W.2d 129, 131 (Tex. Civ.App.-Dallas 1941, writ dism'd). Consequential damages for serious physical and mental suffering may, therefore, be recovered when such suffering is the necessary and foreseeable result of the defendant's conduct. *See City of Tyler v. Likes*, 962 S.W.2d 489, 495–96 (Tex.1998)(citing cases).

Thus, the general rule that mental suffering is not allowable as an element of damages for breach of contract has long been held to be a qualified one. *See*

*Brown,* 150 S.W.2d at 131. Rather, the Texas courts have long upheld mental anguish damages for breach of contract in cases when there is a "special relationship" between the claimant and the contracting party,

> [in that] the contract is personal in nature and the contractual duty or obligation is so coupled with matters of mental concern or solicitude, or with the sensibilities of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering, and it should be known to the parties from the nature of the contract that such suffering will result from its breach.

*Pat H. Foley & Co. v. Wyatt,* 442 S.W.2d 904, 906 (Tex.Civ.App.-Houston [14th Dist.] 1969, writ ref'd n.r.e.) (quoting *Lamm v. Shingleton,* 231 N.C. 10, 55 S.E.2d 810 (1949)). The court of appeals specifically observed in *Pat H. Foley* that the mental anguish of the plaintiff was "not founded solely in the tortious act of the defendant" cemetery operator—who had opened the plaintiff's son's casket near the end of his funeral allowing a grossly offensive odor to escape—but from knowledge of the anguish that would result if the contracting party failed to fulfill its contractual obligation in the manner it did. *Id.* at 907. The court also observed that "[t]he contract was predominantly personal in nature and no substantial pecuniary loss would follow its breach." *Id.* The court stated that it could not be said under the circumstances of the case that non-economic mental anguish damages were outside the contemplation of the parties at the time the contract was made. *Id.*

The Texas Supreme Court applied the foregoing reasoning in the workers' compensation area. It held that the exclusivity provision of the TWCA does not preclude a claim against insurance carriers for breach of the duty of good faith and fair dealing or for intentional misconduct in the processing and paying of a compensation claim under the TWCA. *Aranda,* 748 S.W.2d 210, 214 (1988). The court stated, "It is well established under Texas law that 'accompanying every contract is a common law duty to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a *tort* as well as a breach of contract.'" *Id.* at 212 (quoting *Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 204 S.W.2d 508, 510 (1947)); *see also Seale,* 798 S.W.2d at 390.

The court held that, because of the special trust relationship between the insured and the insurer in the workers' compensation context, "[t]he contract between a compensation carrier and an employee creates the same type of special relationship that arises under other insurance contracts." *Aranda,* 748 S.W.2d at 212. The court explained:

> The injured employee, from the date of his disability, relies on the compensation carrier for weekly disability benefits and payment of medical expenses. He is dependent on the carrier for protection from the economic calamity of disabling injuries. An arbitrary decision by the carrier to refuse to pay a valid claim or to delay payment leaves the injured employee with no immediate recourse.

*Id.* To establish such an intentional breach or breach of the duty of good faith and fair dealing that permits the recovery of non-economic damages in a workers' compensation case, the claimant must establish both "(1) the absence of a reasonable basis for denying or delaying payment of the benefits of the policy *and* (2) that the carrier knew or should have known that there was not a reasonable basis for deny-

ing the claim or delaying payment of the claim." *Id.* at 213.

Addressing the exclusivity provision of the TWCA, the court held that remedies afforded by the Act "are exclusive only if the injury complained of is an injury contemplated by the Act—a personal injury sustained in the course of employment." *Id.* at 214 (citing predecessor to Labor Code section 408.001, Texas Revised Civil Statutes article 8306, section 3). In its view, "[t]he Act was not intended to shield compensation carriers from the entire field of tort law." *Id.; see Reed Tool Co. v. Copelin,* 610 S.W.2d 736, 739 (Tex.1980).[9] The court held that the exclusivity provision does not "exempt employers from common law liability for intentional injuries" and it "cannot be read as a bar to a claim that is not based on a job-related injury." *Aranda,* 748 S.W.2d at 214 (quoting *Reed Tool,* 610 S.W.2d at 739). Rather, "an employee may have one claim against his employer under the Act and another claim at common law for an intentional tort." *Id.; see also Massey v. Armco Steel Co.,* 652 S.W.2d 932, 933 (Tex.1983)(holding that employee may have one claim against his employer under TWCA and another at common law for intentional tort; claimant is permitted to recover for breach of good faith and fair dealing or intentional act if separate from compensation claim and produced independent injury).

Accordingly, the court held that the TWCA "does not bar a claim against a carrier for breach of the duty of good faith and fair dealing or for intentional misconduct in the processing of a compensation claim." *Aranda,* 748 S.W.2d at 214. Recovery is permitted when the claimant shows that the insurer's breach of the duty of good faith and fair dealing or its intentional wrongful act is separate from the compensation claim and has produced an independent injury. *Id.; Massey,* 652 S.W.2d at 933.

Subsequently, in *City of Tyler v. Likes,* the supreme court explored the rationale and extent of the exception to the general rule that limits recovery for breach of contract to economic loss. First, it recognized that "Texas has authorized recovery of mental anguish damages in virtually all personal injury actions." *Likes,* 962 S.W.2d at 495 (quoting *Krishnan v. Sepulveda,* 916 S.W.2d 478, 481 (Tex. 1995)).In addition, it recognized that "[m]ental anguish is also compensable as the foreseeable result of a breach of duty arising out of certain special relationships." *Id.* at 496. These include the physician-patient relationship, and "a very limited number of contracts dealing with intensely emotional non-commercial subjects such as preparing a corpse for burial." *Id.*

The court cautioned, however, that, "[w]ithout intent or malice on the defendant's part, serious bodily injury to the plaintiff, or a special relationship between the two parties," damages are recoverable for mental anguish "in only a few types of cases involving injuries of such a shocking and disturbing nature that mental anguish

---

9. We note that Labor Code section 408.006 states, "It is the express intent of the legislature that nothing in this subtitle shall be construed to limit or expand recovery in cases of mental trauma injuries." TEX. LABOR CODEANN. § 408.006(a) (Vernon 2006).Mental trauma is compensable under this section, however, only when there is evidence of an undesigned or untoward event traceable to a definite time, place, and cause, as opposed to a gradual build-up of emotional stress over a period of time. *GTE Sw. Inc. v. Bruce,* 998 S.W.2d 605, 610 (Tex.1999); *Brown v. Tex. Emp'rs' Ins. Ass'n,* 635 S.W.2d 415, 417 (Tex.1982): *Shannon v. Tex. Gen. Indem. Co.,* 889 S.W.2d 662, 664 (Tex.App.-Houston [14th Dist.] 1994, no writ).

is a highly foreseeable result," such as actions for wrongful death and actions by bystanders for the injury of a close family member. *Id.* at 496. In distinguishing these cases and disallowing recovery for mental anguish damages for property destruction in *Likes* itself, the court reasoned, "While few persons suffering serious bodily injury would feel made whole by the mere recovery of medical expenses and lost wages, many whose property has been damaged or destroyed will be entirely satisfied by recovery of its value." *Id.* at 496–97; *see also Verinakis v. Med. Profiles, Inc.*, 987 S.W.2d 90, 95 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (stating Texas authorizes recovery of damages for mental anguish "(1) as the foreseeable result of a breach of duty arising out of certain special relationships, such as the relationship between a physician and a patient; (2) for some common law torts that generally involve intentional or malicious conduct such as libel and, by analogy, for violations of certain statutes such as the DTPA; and (3) in virtually all personal injury cases where the defendant's conduct causes serious bodily injury").

In *Texas Mutual Insurance Co. v. Ruttiger*, a divided Texas Supreme Court limited *Aranda* without overruling it. No. 08–0751, 2011 WL 3796353, at *1 (Tex. Aug. 26, 2011, rehearing granted). After a detailed examination of the history of the TWCA and of amendments that, in the estimation of the majority, cured many of the ills in the handling of TWCA claims that it believed justified *Aranda*'s imposition of a duty of good faith and fair dealing, the majority held that an injured worker claiming unfair settlement practices under the TWCA has no cause of action under the provision of the Insurance Code that imposes a duty of good faith and fair dealing in the handling and settlement of claims. *Id.* at *5–12 (overruling *Aetna Cas. & Surety Co. v. Marshall*, 724 S.W.2d

770 (Tex.1987)). The court did not, however, extend its ruling to Ruttiger's claim of breach of the common law duty of good faith and fair dealing.

The court reasoned, "In the final analysis, the *Aranda* cause of action is a common law one and it is this Court's prerogative and responsibility to evaluate whether the cause of action continues to be appropriate." *Id.* at *23. However, while the majority was of the belief "that Texas should join the majority of states that do not allow *Aranda*-type suits in the workers' compensation setting," it ultimately concluded that it was up to the Legislature to override *Aranda* if it so chose and that it had not done so. *Id.* The court, therefore, remanded the case to the court of appeals, which had not considered the common law duty of good faith and fair dealing recognized in *Aranda*, but only the violation of the statutory duty of good faith and fair dealing under the Insurance Code, to determine whether the defendant insurance company had breached its duty of good faith and fair dealing under the common law. *Id.* Rehearing has been granted by the supreme court in *Ruttiger*.

We conclude that the instant case is distinct from *Ruttiger* in that the act complained of—the City's breach of the Settlement Agreement in 2004—occurred outside the context of the administrative decision-making process under the TWCA and, therefore, is governed by contract law, rather than by the provisions of the TWCA. In addition, what is at issue in this case is not the availability of a statutory cause of action for unfair settlement practices under the Insurance Code, but the availability under the common law of non-economic damages for pain and suffering and mental anguish for breach of a settlement agreement providing for lifetime medical care, reached in accordance with provisions in the TWCA, that evinces

the type of special relationship recognized in both *Aranda* and *Likes*. *See Likes*, 962 S.W.2d at 496; *Aranda*, 748 S.W.2d at 214.

 Thus, we conclude that recovery of non-economic damages, including damages for pain and suffering and mental anguish, is permitted when the claimant shows either that an employer that is party to a settlement agreement under the TWCA for an injury contemplated by the Act breached its common law duty of good faith and fair dealing or that it committed an intentional wrongful act separate from the injured workers' compensation claim that produced an independent injury and that the pain and suffering or mental anguish that followed the breach was a foreseeable result of the breach. *Aranda*, 748 S.W.2d at 214; *see Massey*, 652 S.W.2d at 933 (holding that employee may have one claim against employer under TWCA and another at common law for intentional tort that produces independent injury); *see also Likes*, 962 S.W.2d at 495 (recognizing compensability for mental anguish arising as foreseeable result of breach of duty arising out of certain special relationships).

 In this case, unlike *Ruttiger*, the claimant, Rhule, and the City reached a valid and binding settlement agreement in 1990 in accordance with the provisions of the TWCA for the lifetime provision of Rhule's reasonable and necessary medical care, including care for his permanent pain caused by his compensable on-the-job spinal cord injury. At the point an enforceable contract was entered between the City and Rhule, the provisions of the TWCA governing the procedures for resolving claims by injured workers ceased to apply, and the City became obligated to perform its contractual duties in good faith. The City performed its obligations under the Settlement Agreement, including paying for Rhule's doctor visits, for his

pain medications, and for the installation of a pain pump, for more than a decade.

In 2004, the City intentionally breached the agreement by refusing to pay for replacement of the failing pain pump, against the recommendation of Rhule's treating physician, agreed to by both parties in the Settlement Agreement, and the recommendation of an expert pain-management physician hired by the City itself and, subsequently, by refusing to pay for Rhule's doctor visits and pain medications. These intentional acts were entirely separate and distinct from any acts in connection with the resolution of Rhule's 1988 claim for compensation for his on-the-job injury in proceedings before the Industrial Accident Board. Furthermore, the City provided no justification for these actions whatsoever other than its own unilateral determination that coverage of Rhule's pain pump, doctor visits, and pain medications was not medically necessary and that it was immune from liability for its acts.

The City's breach of the Settlement Agreement produced entirely foreseeable and necessarily foreseen consequences: Rhule suffered severe and disabling physical pain and mental anguish that interfered with his performance of his daily activities and his ability to work. These injuries were precisely of the type for which recovery is available due to the special relationship that existed between Rhule and the City and the essentially non-economic nature of the damages incurred for physical pain and suffering and mental anguish.

We hold that damages for pain and suffering and mental anguish arising from breach of the settlement agreement were recoverable under the circumstances of this case. The only remaining question, therefore, is whether Rhule proved his entitlement to damages for pain and suffering and mental anguish at trial.

### 2. Propriety of Jury Charge on Physical Pain Damages

In its second issue, the City contends that the trial court erred in submitting a question to the jury that allowed it to award Rhule damages for physical pain.

The City objected at trial to the charge question allowing the jury to find an amount of damages to compensate Rhule for his physical pain resulting from the City's breach of the Settlement Agreement. Rhule argued then, and argues now, that the question was proper. He argues that the City's refusal to comply with its obligation to pay for his medical expenses denied him access to the pain pump, which had managed his pain effectively and allowed him to work and perform other day-to-day tasks. Thus, because he could not afford the pain pump on his own and was forced to rely on other, less-effective pain-management treatments, he suffered unnecessary pain while he was required to wait for his dispute with the City to be resolved, and thus his physical pain was actual damage that resulted from the City's breach of the agreement.

We review the trial court's submission of instructions and jury questions for an abuse of discretion. *Moss v. Waste Mgmt. of Tex., Inc.*, 305 S.W.3d 76, 81 (Tex.App.-Houston [1st Dist.] 2009, pet. denied). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or if it acts without reference to any guiding rules or principles. *Id.* A trial court has wide discretion in submitting instructions and jury questions. *Id.*

The evidence in this case showed that the City not only denied Rhule the replacement of his failing pain pump, which had been recommended by his agreed upon treating physician, Dr. Alvarez, but also refused to pay for his doctor visits and pain medications, which, the evidence showed, he required in order to function. The City also contacted a respected, board-certified pain-management specialist, Dr. Duncan, for a "peer review" without Rhule's knowledge, and asked her to determine whether the use of the pain pump was necessary and reasonable for Rhule's care and treatment. She replied that it was and informed the City that it could expect batteries in the device to have to be replaced as "necessary." After it received this answer, the City hired a different physician, Dr. Gary Freeman, who was not a pain specialist, and claimed to rely upon his opinion in refusing to replace the pain pump. When Rhule, who had engaged an attorney, objected, the City chose a fourth doctor, Dr. Leonard Herschkowitz, as its medical expert. That doctor also opined that replacement of the pain pump, which was malfunctioning while Rhule's pain was increasing, was reasonable and necessary to "allow the gentleman to function." There was additional evidence that Rhule began to experience excruciating physical pain and inability to work.

We hold that the record contained sufficient evidence of pain and suffering caused by the City's breach of the Settlement Agreement to support the jury verdict.

We overrule the City's second issue.

### 3. Sufficiency of the Evidence Supporting Mental Anguish Damages

In its third issue, the City complains that the evidence supporting the jury's award for mental anguish damages was insufficient in that there was no evidence of Rhule's propensity for mental anguish at the time the Settlement Agreement was entered into by the parties, and, therefore, the trial court should have granted the City's motion for judgment notwithstanding the verdict.

We may sustain a "no-evidence" or legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or rules of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex.2005). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable fact-finder could and disregard evidence contrary to the finding unless a reasonable fact-finder could not. *Id.* at 807, 827.

The jury charge stated, "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate [Rhule] for his damages if any, that resulted from [the City's] failure to comply [with the Settlement Agreement]? ... Only include such amounts for mental anguish that you find would have been within the contemplation of the City at the time the contract was made." In response to the damages question, the jury answered that Rhule was entitled to $75,000 for his mental anguish.

The City did not object before the trial court to this portion of the charge. The City now argues on appeal that "[t]here was absolutely no evidence, or the evidence was so weak that it did nothing more than create a surmise or suspicion, the Rhule had a particular susceptibility to emotional distress and the City knew about his particular susceptibility." It relies on *Lions Eye Bank of Texas v. Perry*, 56 S.W.3d 872 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) to support its claims. However, because the City did not object to the portion of the charge instructing the jury on mental anguish damages, we evaluate the sufficiency of the evidence based on the charge and instructions that were actually submitted to the jury. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex.2000). Thus, to overturn the jury's award, we must determine that there was no evidence that mental anguish damages would have been within the contemplation of the City at the time it entered into the Settlement Agreement with Rhule. *See City of Keller*, 168 S.W.3d at 810; *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex.2003); *see also Osterberg*, 12 S.W.3d at 55 (holding that when there is no relevant objection to jury charge, we evaluate sufficiency of evidence based on charge and instructions that were submitted to jury).

"Generally, an award of mental anguish damages must be supported by direct evidence that the nature, duration, and severity of mental anguish was sufficient to cause, and caused, either a substantial disruption in the plaintiff's daily routine or a high degree of mental pain and distress." *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 231 (Tex.2011) (upholding mental anguish damages award to widow whose husband's body was moved by cemetery operator without permission, but overturning award to decedent's daughters for legal insufficiency of evidence to support award); *Likes*, 962 S.W.2d at 495; *Pat H. Foley & Co.*, 442 S.W.2d at 907. Even when an occurrence is of the type for which mental anguish damages may be awarded, "evidence of the nature, duration, and severity of the mental anguish is required." *Guerra*, 348 S.W.3d at 231; *see also Verinakis*, 987 S.W.2d at 95(stating that, while Texas law no longer requires a physical manifestation of mental anguish, plaintiff "must produce direct evidence of the nature, duration, and severity of the

mental anguish, establishing a substantial disruption in his or her daily routine").

At trial, Rhule testified, regarding the Settlement Agreement with the City, that it was important to him that he receive lifetime medical treatment for his back injury because the doctor told him that he had an ongoing problem that would require treatment for the rest of his life. Rhule testified that when the City originally decided to file suit appealing the administrative proceeding determination that he was entitled to lifetime medical expenses he was very concerned because the City only wanted to give him ten years' worth of medical expenses. He eventually settled his claim with the City under the terms related in the Agreed Judgment.[10] Rhule further testified that he relied on the payment of his medical expenses to effectively manage his pain, including the City's approval of his first pain pump. When the City denied the replacement of the battery in his pain pump, and eventually denied other forms of treatment as well, he experienced significant pain, fear that he would never be able to adequately treat the pain he was suffering if the City did not pay his expenses, difficulty sleeping, eating and digestion problems, and other stress-related and psychological problems. Finally, Rhule testified that he was seeking $108,000 for his mental anguish—a number he arrived at because it was "three times what they paid [him] many years ago for [his] mental anguish."

Rhule's testimony and other documents indicated that the City was aware from the time of the original Settlement Agreement of the nature and severity of Rhule's injury and of Rhule's diagnosis of permanent pain requiring lifelong medical care and the anguish that its decision to breach its duty to perform its obligations under the contract would cause. Rhule testified that it was important to him that he receive lifetime medical treatment for his injury, that he was not willing to accept the City's offer of ten years' medical expenses because his doctor had already told him his back injury would require care for the rest of his life, that he could not afford to replace the pump and provide his medication on his own, and that his functionality was severely compromised without pain medication. Knowing these things, the City obligated itself to provide lifetime medical care to Rhule, including pain management care, and fulfilled its obligations for over a decade, including paying for Rhule's doctor visits, medications, and for installation of a pain pump. Then, when the pump began to fail, the City made its decisions to refuse to replace the pain pump, to cease paying for doctor visits, and to cease paying for Rhule's pain medications, overruling repeated competent medical recommendations that showed that such medical care continued to be reasonable and necessary, in conscious disregard that Rhule predictably would suffer and did suffer both physical pain and mental anguish as a result of its actions.

We conclude that the evidence is sufficient to show that mental anguish damages were a foreseeable consequence of the City's breach of the Settlement Agreement that was within the contemplation of the City at the time it entered into the Settlement Agreement with Rhule and that the City nevertheless intentionally breached

10. As Rhule's counsel was questioning him at trial, and Rhule began to testify regarding the circumstances surrounding the original suit and Settlement Agreement, counsel for the City interjected, "Your Honor, he's getting into settlement negotiations which, I think, are inadmissible, 408." Thus the City's argument on appeal that neither Rhule's original attorney nor the City's original attorney testified regarding the circumstances surrounding the formation of the Settlement Agreement is misleading.

its duty to provide medical care, causing Rhule to suffer the mental anguish it necessarily foresaw.

We overrule the City's third issue.

## C. Attorney's Fees

■ In its fourth issue, the City argues that Rhule was not entitled to an award of attorney's fees. However, the City did not make any objection to the award of attorney's fees in the trial court, and it affirmatively stated in its motion for judgment notwithstanding the verdict that the trial court should enter judgment for Rhule awarding "mental anguish damages, out of pocket expenses, and attorney fees only." *See* TEX.R.APP. P. 33.1; *Marcus v. Smith*, 313 S.W.3d 408, 417 (Tex.App.-Houston [1st Dist.] 2009, no pet.) ("In order to preserve certain complaints regarding an award of attorney's fees, a party must make a timely and sufficiently specific objection to such an award in the trial court."). Therefore, the City waived any complaint regarding attorney's fees.

We overrule the City's fourth issue.

## CONCLUSION

We deny the City's motion to dismiss for lack of jurisdiction. We affirm the judgment of the trial court.

Justice MASSENGALE, dissenting.

MICHAEL MASSENGALE, Justice, dissenting.*

Christopher Rhule suffered a tragic injury in the line of duty serving as a City of Houston firefighter. There is no dispute that for his sacrifice, Rhule justly deserved to be compensated. There was, however, a dispute about the amount of workers' compensation that would be paid to him, and that matter was resolved by a settlement agreement. This appeal relates to subsequent disputes that arose with respect to medical treatment to be provided pursuant to the settlement. Rhule eventually filed suit against the City for breach of the settlement agreement.

The City is immune from an employee's suit claiming pain and suffering or mental anguish damages arising from an on-the-job injury. The district court therefore lacked jurisdiction to the extent Rhule sought such remedies. In addition, Rhule was required to present such claims for administrative resolution before filing suit in court. Accordingly, Rhule's failure to exhaust his administrative remedies constitutes a separate jurisdictional barrier to his claims.

## I. Governmental immunity

The City of Houston asserts partial immunity from Rhule's suit, to the extent that it seeks monetary relief for physical pain and mental anguish resulting from the City's breach of a settlement agreement. Those categories of damages were not available among the statutory remedies for Rhule's original workers' compensation claim. At the time of Rhule's original claim, his sole remedies were (1) a percentage of his average weekly wage, up to a statutory maximum, for no more than 401 weeks, (2) reasonable and necessary medical expenses, and (3) attorney's fees awarded as a percentage of any income benefits received.[1]

---

* I withdraw my dissenting opinion of July 21, 2011, and I substitute this opinion in its place.

1. Because Rhule's injury occurred in 1988, his claim was governed by the "old" worker's compensation act. *See generally* Act of May 26, 1981, 67th Leg. R.S., ch. 861, § 1, 1981 Tex. Gen. Laws 3290, 3290 (formerly codified at TEX. REV.CIV. STAT. art. 8306 § 10), *repealed by* Act of Dec. 12, 1989, 71st Leg., 2nd C.S., ch. 1, § 16.07(7), 1989 Tex. Gen. Laws 1, 114; Act of Mar. 6, 1969, 61st Leg.R.S., ch. 18,

A municipality's governmental immunity consists of both immunity from liability and immunity from suit. *See, e.g., Tooke v. City of Mexia,* 197 S.W.3d 325, 332 (Tex.2006). The validity of a waiver of governmental immunity depends on the waiver being clear and unambiguous as to its scope. *See, e.g.,* TEX. GOV'T CODE ANN. § 311.034 (West Supp.2010); *Travis Cent.Appraisal Dist. v. Norman,* 342 S.W.3d 54, 58 (Tex.2011). In the case of the workers' compensation system, the available remedies are limited and exclusive. *See, e.g.,* TEX. LAB.CODE ANN. § 408.001(a) (West 2006); *HCBeck, Ltd. v. Rice,* 284 S.W.3d 349, 352 (Tex.2009). Remedies not clearly and unambiguously included in the workers' compensation system are therefore not included in the scope of the waiver of governmental immunity. *See, e.g., City of LaPorte v. Barfield,* 898 S.W.2d 288, 297 (Tex.1995) ("The rule that a waiver of immunity must be clear and unambiguous applies to both the existence and the extent of the waiver.").

A governmental entity may settle a claim as to which its immunity has been waived; but by doing so, it does not expand the scope of the waiver. This common-sense principle was a critical assumption underlying the decision in *Texas A & M University–Kingsville v. Lawson,* 87 S.W.3d 518 (Tex.2002). *Lawson* held that when the State enters into a settlement agreement to resolve a claim for which it has waived immunity, it cannot thereafter claim immunity from a suit for breach of the settlement agreements. *See id.* at 522–23. In holding that the "State should not regain waived immunity by settling a case," a plurality of the Supreme Court of Texas noted that its holding assumed that "a governmental entity would not, in settling a suit for which immunity has been waived, undertake an obligation that exposes it to liability much greater or different than that which it faced from the original claim." *Id.* at 522. Relying on that logic, our Court has previously held that there is no waiver of immunity to suit for a claimed breach of a settlement agreement when the State was immune from the settled claim. *See Porretto v. Patterson,* 251 S.W.3d 701, 712 (Tex.App.-Houston [1st Dist.] 2007, no pet.).

This is not a case in which a governmental entity would reclaim waived immunity by asserting immunity from a suit for breach of a settlement agreement. From the outset, there has been no waiver of the City's immunity from suit for claims of pain and suffering or mental anguish. The City was therefore immune from a suit asserting such claims. In settling a workers' compensation claim, no rational governmental entity would agree to provide greater remedies than those available through the workers' compensation system and for which immunity already had been waived. And a rational governmental entity would only agree in settlement to provide a remedy within the universe of outcomes available in the workers' compensation process (or of equivalent or lesser value).

The majority's holding may lead state governmental entities to be reluctant to

§ 4, 1969 Tex. Gen. Laws 48, 49 (formerly codified at TEX.REV.CIV. STAT. art. 8306, § 11), *repealed by* Act of Dec. 12, 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(7), 1989 Tex. Gen. Laws 1, 114; *see also* Act of Dec. 12, 1989, 71st Leg., 2d C.S., ch. 1, § 15.47, 1989 Tex. Gen. Laws 1, 113 (formerly codified as TEX. REV.CIV. State. Art. 8309h, § 3), *repealed by* Act of May 12, 1993, 73rd Leg., R.S., ch. 269,

1993 Tex. Gen. Laws 987, 1250. The Legislature codified the current worker's compensation system in the Labor Code as the Texas Workers' Compensation Act. *See* TEX. LAB.CODE ANN. §§ 401.001–419.007 (West 2006 & Supp. 2010); *see also* TEX. LAB.CODE ANN. §§ 504.001–.073 (West 2006 & Supp.2010) (providing for worker's compensation insurance coverage for employees of political subdivisions).

agree to provide lifetime medical benefits to workers' compensation claimants for fear that a future dispute over the provision of such benefits could expose the entity to mental anguish damages and other remedies that would not be available to the claimant so long as the government simply litigates the claim to the conclusion of the administrative and legal process. In this case, the City agreed to provide a remedy that could have resulted from the workers' compensation claim resolution process (i.e., lifetime medical benefits and a fixed amount of cash). Only the fact of a settlement agreement is now alleged to support Rhule's claim for pain and suffering and mental anguish damages. The fact of a settlement agreement with Rhule should not subject the City to responding to a suit alleging theories of recovery from which it would be immune if it had refused to settle and the outcome of the claims process had been the same. The law of governmental immunity does not permit this undesirable result.

Moreover, to the extent that a workers' compensation claimant may assert a claim in connection with the care, skill, or reasonable expedience and faithfulness with which a claim is paid by a workers' compensation carrier,[2] that claim properly arises not under the statutory workers' compensation scheme, but instead under an independent common-law duty of good faith and fair dealing recognized by the Supreme Court of Texas in *Aranda v. Insurance Company of North America,* 748 S.W.2d 210, 212–13 (Tex.1988).[3] A municipality is immune from suit for torts committed in the performance of its governmental functions,[4] including the provision of workers' compensation benefits.[5] The Legislature has specified that in the context of providing workers' compensation benefits, "[a]n action against a governmental entity or unit or an employee of a governmental entity or unit for a breach of the duty of good faith and fair dealing is governed by Chapters 101 and 104, Civil Practice and Remedies Code." TEX. LAB. CODE ANN. § 416.002(b) (West 2006).Those statutory provisions, however, do not waive a municipality's immunity from *an Aranda* claim.[6] Even if an *Aranda* claim

---

**2.** Rhule acknowledges that the City was self-insured.

**3.** The continuing viability of *Aranda* has been called into doubt. *See Texas Mut. Ins. Co. v. Ruttiger,* No. 08–0751, 2011 WL 3796353, at *23 (Tex. Aug. 26, 2011), *reh'g granted,* No. 08–0751 (Tex. Feb. 17, 2012). Even if the Supreme Court of Texas ultimately determines that revisions to the workers' compensation statutory scheme have obviated the need for *Aranda*-type claims, Rhule's injury occurred under a prior statutory regime, *see supra* note 1, *and Aranda* presumably would still apply.

**4.** *See Tooke v. City of Mexia,* 197 S.W.3d 325, 343 (Tex.2006).

**5.** *See Jackson v. City of Galveston,* 837 S.W.2d 868, 870–71 (Tex.App.Houston [14th Dist.] 1992, writ denied) (characterizing the provision of workers' compensation benefits as a governmental function).

**6.** *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (West 2011) (waiving governmental liability for "property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment" if, among other conditions, the injury arises from "the operation or use of a motor-driven vehicle or motor-driven equipment" or "a condition or use of tangible personal or real property"); *id.* §§ 104.001, .002, .0035 (waiving governmental immunity from duty to indemnify certain persons for certain acts or omissions "by the person in the course and scope of the person's office, employment, or contractual performance for or service on behalf of the agency, institution, or department"); *see also Milner v. City of Leander,* 64 S.W.3d 33, 40 (Tex.App.-Austin 2000, no pet.) (no statutory waiver of immunity for claims of bad-faith denial of workers' compensation benefits by municipalities).

could be asserted against a governmental entity under Chapters 101 and 104, such a claim would be subject to limitations on damages recoverable under those statutory provisions.[7]

Courts traditionally defer to the Legislature on the waiver of governmental immunity, assuming it to be "better suited to balance the conflicting policy issues associated with waving immunity." *Norman*, 342 S.W.3d at 58 (quoting *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 695 (Tex.2003)). Permitting Rhule to proceed with his suit and to ultimately recover damages for physical pain and mental anguish in the guise of a contract claim disrupts the balance struck by the Legislature through the enactment of Labor Code section 416.002(b), both by improperly subjecting the governmental entity to responding to and defending the suit, and also, to the extent suit is permitted, by circumventing statutory limitations to permit the recovery of unrestricted tort-type damages, free from the limitations applied by the Legislature when tort damages are recoverable against a governmental entity.[8] Accordingly, the City's plea to the jurisdiction should have been granted.

## II. Exhaustion of administrative remedies

After we originally decided this appeal, the City presented a new argument that the trial court lacked jurisdiction over this case because Rhule failed to exhaust his administrative remedies. The argument is premised upon the accurate characterization of Rhule's contract claim concerning payment for medical services or treatment as a dispute arising from a workers' compensation compromise settlement agreement approved by the Industrial Accident Board and implemented by an agreed judgment approved by a court.[9] The original petition specifically alleged that the City "has continued to deny necessary and reasonable medical care and treatment, as well as the provision of medications ... in clear and direct breach of the agreed judgment. . . ." The fact that Rhule's claim was

7. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.023 (limiting the amount of liability of governmental entities under the Texas Tort Claims Act, including maximum amount of $250,000 for each person for each single occurrence for bodily injury); *id.* § 101.024 (disclaiming authorization of exemplary damages under the Texas Tort Claims Act); *id.* § 104.003 (limiting the amount of recoverable damages pursuant to a governmental entity's liability for indemnification under Chapter 104).

8. Although the panel majority finds this claim analogous to those permitted under Local Government Code section 271.153, the majority never explains how the remedy sought by Rhule is permitted under that provision's limitations on the amount of money that can be awarded against a local governmental entity for the breach of a contract. Under section 271.153, contract damages are limited to:

 (1) the balance due and owed by the local governmental entity under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration;

 (2) the amount owed for change orders or additional work the contractor is directed to perform by a local governmental entity in connection with the contract;

 (3) reasonable and necessary attorney's fees that are equitable and just; and

 (4) interest as allowed by law, including interest as calculated under Chapter 2251, Government Code.

TEX. LOC. GOV'T CODE ANN. § 271.153 (West Supp.2011). Damages for pain and suffering and mental anguish are not contemplated by this provision, which specifies the exclusive remedies recoverable from a local governmental entity for breach of a contract.

9. The City thus treats Rhule's cause of action as a contract claim, and it does not, as suggested by the panel majority, argue that "Rhule's claim was not a claim for breach of contract, but instead was a claim for denial of benefits."

not first presented for administrative resolution is an additional reason why the trial court's judgment should be vacated and the case should be dismissed.

The rights and duties of the parties are determined by the provisions of the Workers' Compensation Act applicable at the time of the accident. *See, e.g., Gibson v. Grocers Supply Co.,* 866 S.W.2d 757, 759 (Tex.App.-Houston [14th Dist.] 1993, no writ). The exhaustion argument is based upon a workers' compensation statute that was in effect at the time of Rhule's injury in 1988.[10] Section 12b of former Article 8307 of the Revised Statutes provided:

> Whenever in any compromise settlement agreement approved by the board or in any agreed judgment approved by the court, any dispute arises concerning the payment of medical [or] hospital ... services ... or treatment, or for medicines ... for the injured employee ... as provided in such compromise settlement agreements or agreed judgments, *all such disputes concerning the payment thereof shall be first presented by any party to the Industrial Accident Board* within six months from the time such dispute has arisen (except where "good cause" is shown for any delay) for the board's determination. A dispute arises when a written refusal of payment has been filed with the board.... Any final ruling, decision, denial, or award of the board may be appealed by any party according to and under the provisions of Section 5 of Article 8307 of this Act. The board, however, shall have no jurisdiction to rescind or set aside any compromise settlement agreement approved by the board or any agreed judgment approved by the court.[11]

The City argues that this statutory provision governs its compromise settlement agreement with Rhule, which was approved by the board and incorporated into an agreed judgment approved by the court. Because Rhule failed to present the dispute to the board as required by the statute, he failed to exhaust his exclusive administrative remedy, and the trial court lacked jurisdiction.[12] Like *American Motorists Insurance Co. v. Fodge,* 63 S.W.3d 801 (Tex.2001), and unlike *Texas Mutual Insurance Co. v. Ruttiger,* No. 08–0751, 2011 WL 3796353 (Tex. Aug. 26, 2011), *reh'g granted,* No. 08–0751 (Tex. Feb. 17, 2012), at the time Rhule filed suit, a dispute still existed between Rhule and the City of Houston that had not been first presented for administrative resolution by the Division of Workers' Compensation or any of its regulatory predecessors. *See Ruttiger,* 2011 WL 3796353, at *5 (discuss-

---

**10.** The panel majority states that the City "does not present any argument or authority that would support ignoring sections 408.021, 408.005, and 408.011 of the Labor Code ... [n]or does the City present any argument or authority that would support extending the doctrine of exhaustion of administrative remedies to claims of breach of a settlement agreement under the TWCA." This is not really an omission from the City's briefing, because the City relied upon Revised Statutes Article 8307, § 12b, a statute that applied at the time of Rhule's injury but has since been repealed. It is the City's contention that this statute applies to the parties' compromise settlement agreement, yet the panel majority does not explain why § 12b does not apply.

**11.** Act of May 20, 1983, 68th Leg. R.S., ch. 501, § 1, 1983 Tex. Gen. Laws 2934–35 (formerly codified at Tex.Rev.Civ. Stat. art. 8307 § 12b) (emphasis supplied), *repealed by* Act of Dec. 11, 1989, 71st Leg. 2nd C.S., ch. 1, § 16.01(10), 1989 Tex. Gen. Laws 114–15.

**12.** *Cf. King v. Tex. Employers' Ins. Ass'n,* 716 S.W.2d 181, 183 (Tex.App.-Fort Worth 1986, no writ) (affirming dismissal of claim alleging breach of compromise settlement agreement relating to workers' compensation benefits for want of jurisdiction, and noting that article 8307, § 12b, required the claimant to present her claim to the board before filing suit).

ing *Fodge,* 63 S.W.3d at 803–04). The panel majority has made no effort to explain why former Article 8307, section 12b, would not apply to this dispute over Rhule's claim for breach of the compromise settlement agreement. Instead, the majority relies exclusively upon other earlier [13] or later-enacted [14] versions of the statutory scheme, and cases applying those enactments,[15] without substantively addressing the particular statute relied upon by the City.

The panel majority also contends that the City is "estopped to deny the history of this case." [16] But "subject-matter jurisdiction is a power that 'exists by operation of law only, and cannot be conferred upon any court by consent or waiver.'" [17] None of the authorities relied upon by the panel majority involve the invocation of estoppel to justify the exercise of subject-matter jurisdiction over a governmental entity. The panel majority's discussion of estoppel is dicta in light of its conclusion that Rhule was not required to exhaust his administrative remedies before filing suit to obtain medical services promised in a compromise settlement agreement pertaining to a workers' compensation claim. Nevertheless, the suggestion that jurisdiction over this case may be generated by estoppel is simply wrong.

The City's plea to the jurisdiction should have been granted, and I respectfully dissent from the panel majority's contrary conclusion.

---

13. The majority relies upon *Barnes v. Bituminous Casualty Corp.,* 495 S.W.2d 5 (Tex.Civ. App.-Amarillo 1973, writ ref'd n.r.e.), which was decided 10 years before the 1983 enactment of the statute relied upon by the City, for the proposition that the Industrial Accident Board lost jurisdiction over a matter after the board approved the parties' compromise settlement agreement. The majority offers no explanation or support for its assertion that the language it relies upon from *Barnes* "is still good law today" despite the 1983 legislative changes invoked by the City, which specifically required disputes over compromise settlement agreements to be first presented to the board.

14. The panel majority references the current version of section 408.005 of the Labor Code, which relates to settlements and agreements, but it provides no explanation of why this current statute governs Rhule's claim arising from his 1988 injury and the breach of the compromise settlement agreement reached in 1990. Nor does the panel majority explain why these provisions apply and the statute relied upon by the City does not.

15. The panel majority relies on *Gregson v. Zurich American Insurance Co.,* 322 F.3d 883(5th Cir.2003), for the proposition that

"breach of a settlement agreement reached under the TWCA is not treated like an initial claim for benefits for an on-the-job injury, for which administrative remedies must be exhausted." *Gregson* provides no guidance in this appeal because that case turned upon the inapplicability of the medical dispute resolution procedure of Labor Code section 413.031, *see Gregson,* 322 F.3d at 887–88, a matter that is not implicated by Rhule's claim against the City.

16. Curiously, the panel majority incorrectly states that "the City presents no argument why it is not estopped to deny the history of this case," when in fact the City filed a reply brief to respond to Rhule's suggestion of estoppel. In its reply, the City relied upon *Tourneau Houston, Inc. v. Harris County Appraisal Dist.,* 24 S.W.3d 907, 910 (Tex.App.-Houston [1st Dist.] 2000, no pet.), for the proposition that "[n]o one is ever estopped from asserting lack of subject matter jurisdiction. Subject matter jurisdiction cannot be conferred by consent, waiver, or estoppel at any stage of a proceeding."

17. *Dubai Petroleum Co. v. Kazi,* 12 S.W.3d 71, 76 (Tex.2000) (quoting *Fed. Underwriters Exch. v. Pugh,* 141 Tex. 539, 174 S.W.2d 598, 600 (1943)).